TRAVELERS INSURANCE COMPANY *v.* ROBERT NAMEROW ET AL.

ROBERT NAMEROW ET AL. *v.* TRAVELERS INSURANCE COMPANY
(SC 16375)

Norcott, Katz, Sullivan, Vertefeuille and Flynn, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of argument.

Argued November 1, 2000—officially released September 4, 2001**

** Following reconsideration by this court, part I of this opinion has been superseded. See *Travelers Ins. Co.* v. *Namerow*, 261 Conn. 784, 807 A.2d 467 (2002).

*Austin J. McGuigan*, with whom were *Joseph B. Burns* and, on the brief, *Glenn E. Coe* and *Jennifer Weitz-Clancy*, for the appellants (Robert Namerow and Barbara Namerow).

*Frank H. Santoro*, with whom were *Frederick B. Tedford* and, on the brief, *Christopher J. Coxon*, for the appellee (Travelers Insurance Company).

*Opinion*

VERTEFEUILLE, J. The defendants, Robert Namerow and Barbara Namerow, appeal from the judgments for the plaintiff, Travelers Insurance Company, rendered after a jury trial in this consolidated action to determine the liability of the parties pursuant to a homeowner's insurance policy.[1] The defendants contend that the trial court improperly: (1) failed to instruct the jury on the elements of the civil arson defense; and (2) abused its discretion by admitting into evidence a document that the defendants claim does not meet the requirements of the business records exception to the hearsay rule. We disagree and, therefore, affirm the judgments of the trial court.[2]

---

[1] The Travelers Insurance Company first filed an action against the Namerows on grounds that are set forth in the text of this opinion. The Namerows thereafter filed an action against the Travelers Insurance Company alleging various claims that are also set forth in the text of this opinion. Subsequently, the trial court consolidated these actions. For purposes of clarity, we refer to Travelers Insurance Company as the plaintiff and the Namerows as the defendants.

[2] In the event that the defendants prevailed and were awarded a new trial, the plaintiff presented an adverse ruling of the trial court for our consideration pursuant to Practice Book § 63-4 (a) (1) (B). Specifically, the plaintiff claims that the trial court improperly instructed the jury that, if the defendants had elected not to repair or replace their house and instead had accepted only cash value under the policy, their maximum recovery would have been the policy limit of $485,500. Because we affirm the trial court's judgments, we need not reach this issue.

The plaintiff brought the first of these two actions against the defendants to recover certain cash advances, totaling $50,000, that it had paid to the defendants pursuant to a homeowner's insurance policy (policy) issued by the plaintiff. The plaintiff alleged in its complaint that the defendants were not covered under the policy because the loss, which resulted from a fire in the defendants' house, was caused by an act committed by or at the direction of the defendants with the intent to cause such loss. In response, the defendants filed an answer denying the plaintiff's allegations.

Subsequently, the plaintiff paid $374,577.83 to the defendants' first mortgagee on the property at the time of the fire, Prudential Home Mortgage Company, in accordance with the policy's mortgage clause. The mortgage clause required the plaintiff to pay the defendants' mortgage holder for the loss to the house, to the extent of the mortgage holder's interest in the property. This clause further required the plaintiff to pay the loss to the mortgage holder regardless of whether the plaintiff had denied the defendants' claim under the policy. The plaintiff amended its complaint to seek as additional damages the amount paid to Prudential Home Mortgage Company under the mortgage clause.[3]

Thereafter, the defendants filed the second action against the plaintiff, setting forth their claims in a thirteen count complaint. The complaint contained, inter alia, claims arising under the policy for breach of contract, bad faith, breach of fiduciary duties, intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, invasion of privacy, intentional misrepresentation, negligent misrepresentation, and damages under the Connecticut Unfair Trade

---

[3] The amended complaint also sought to recover $8625 for a chain-link fence the plaintiff erected around the defendants' house. The plaintiff, however, offered no evidence pertaining to the chain-link fence at trial.

Practices Act; General Statutes § 42-110a et seq.; and the Connecticut Unfair Insurance Practices Act. General Statutes § 38a-815 et seq. In response, the plaintiff filed an answer denying each of the defendants' claims. The plaintiff also filed thirteen special defenses asserting, inter alia, that the policy did not cover the defendants' loss because the defendants either expected or intended the loss.[4] The plaintiff also filed a three count counterclaim for, inter alia, bad faith and vexatious litigation. Thereafter, the cases were consolidated and tried to the jury.

The jury reasonably could have found the following facts. On March 19, 1994, the plaintiff issued the homeowners policy to the defendants. On February 3, 1995, a fire destroyed most of the defendants' house located at 217 Deercliff Road in Avon. At the time of the fire, the policy was in full effect. The policy provided coverage for loss and damage to the defendants' house and personal property caused by fire, and coverage for additional living expenses incurred by the defendants in the event that their house became uninhabitable. The policy, however, excluded from coverage any loss caused directly or indirectly by any act committed by or at the direction of the defendants with the intent to cause a loss.

At all times after the fire, the defendants maintained that the fire had begun accidently in their Mercedes-Benz automobile parked in their garage. Barbara Namerow, who was home alone when the fire started, testified that she heard "exploding noises" coming from the garage and, when she looked into the garage, she saw dark smoke coming from the Mercedes-Benz. She tele-

---

[4] The plaintiff's second special defense provided: "The . . . policy does not provide coverage for acts or events resulting in property damage either expected or intended by the [defendants]. The [defendants'] claim is not covered to the extent that said claim is based on damage expected or intended by the [defendants]."

phoned her husband, then the police, and exited the house. Police and fire personnel arrived soon afterward, and Robert Namerow arrived thereafter.

After arriving on the scene of the fire, Robert Namerow notified their insurance agent of the incident, who then notified the plaintiff. In response, Richard Sweeney, a claims representative for the plaintiff, visited the defendants' house on the day of the fire. On the basis of the defendants' statements that the fire was accidental and pursuant to the provisions of the policy, Sweeney issued the defendants an advance in the amount of $10,000. Sweeney subsequently issued the defendants two additional advances for $15,000 and $25,000 on February 13, 1995, and March 10, 1995, respectively.

On the same day of the fire, Sergeant James Wolfe and Detective William Flanagan of the state fire marshal's office investigated the fire at the defendants' house. They determined that the fire originated in the garage and thereafter removed the defendants' destroyed Mercedes-Benz and Subaru automobiles from the garage and towed them to a facility to inspect them further. On February 6, 1995, investigators for the plaintiff and personnel from the state fire marshal's office went to the facility and examined the Mercedes-Benz automobile. They concluded that an overheating problem in the automobile's catalytic converter was a possible cause of the fire.

On February 10, 1995, the plaintiff's investigators returned to the facility to examine the Mercedes-Benz a second time and to take samples. The samples that the plaintiff had removed from the interior of the Mercedes-Benz tested positive for the presence of unweathered gasoline. These results indicated that the gasoline was fresh and, because of its unweathered condition, could not have come from the gas tanks of either the Mer-

cedes-Benz or the Subaru automobile. The plaintiff's investigators also conducted an examination of the defendants' garage on February 17, 1995, at which time the investigators noticed the smell of gasoline emanating from the drains in the garage floor. On February 23, 1995, the plaintiff's investigators returned to the defendants' garage a second time and obtained samples of the garage's concrete floor and the soil found underneath the garage floor drains. The results of these samples also showed the presence of unweathered gasoline. The investigators concluded that the gasoline had been poured in the garage prior to the fire. On the basis of these findings, the plaintiff concluded that the fire was incendiary in nature and was started either by the defendants or at their direction, with the intent to cause a loss.

At trial, the parties disputed the origin of the fire and whether the defendants' damages were covered under the policy. The plaintiff contended that the defendants caused the fire by either igniting or directing someone to ignite accelerants that were spread throughout the garage. The defendants maintained that the fire started accidentally in the engine of the Mercedes-Benz while it was parked in the garage. In addition to the testimony of the defendants and of the fire and police department personnel that had arrived at the scene of the fire or investigated the fire, both parties presented expert testimony regarding the timing of events surrounding the progression of the fire, the burn patterns of the fire, and whether the fire was incendiary in origin. The jury found for the plaintiff in both actions and the trial court rendered judgments in accordance with the jury verdicts. This appeal followed.[5] We affirm the judgments of the trial court. Additional facts will be set forth as necessary.

---

[5] We transferred the appeal from the Appellate Court to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

The defendants first claim that the trial court improperly failed to instruct the jury in accordance with the defendants' request to charge the jury on the civil arson defense, which the defendants maintain was required as a matter of law. Specifically, the defendants claim that the trial court ignored Supreme Court and Appellate Court precedent by refusing to charge the jury that, in order for the plaintiff to prevail, it must prove by a preponderance of the evidence that the fire was incendiary, that the defendants had the opportunity to cause the fire, and that the defendants had a motive for setting the fire. Further, the defendants contend that the evidence offered by the plaintiff with regard to the motive element of the civil arson defense was not sufficient to warrant judgments in the plaintiff's favor and, thus, those judgments must be reversed. We conclude that the plaintiff did not assert the special defense of civil arson but instead denied the defendants' claim based on the provisions of the policy. Accordingly, we affirm the trial court's judgments.

The following procedural history is relevant to our resolution of this claim. The defendants moved for a directed verdict at the close of the plaintiff's case, arguing that the plaintiff had failed to establish the elements of the civil arson defense. Specifically, the defendants claimed that the plaintiff had made no showing whatsoever that the defendants had a motive to set fire to their house, as is required in a civil arson case. The plaintiff responded that the civil arson defense was not relevant in this case because the plaintiff had brought the initial action and had denied the defendants' claim pursuant to the terms of the policy. The plaintiff claimed that pursuant to the policy it had to prove only that the loss to the house arose out of an act committed by or at the direction of the defendants with the intent to cause the loss. Additionally, the plaintiff maintained

that motive was not a required element to establish civil arson. Further, the plaintiff argued that, even if motive were a required element, it had proffered sufficient evidence to prove the defendants' motive and to warrant a denial of the defendants' motion for a directed verdict.

The trial court denied the defendants' motion, finding: (1) that there was sufficient evidence from which the jury could infer that the defendants had the motive to set fire to their house; and (2) that evidence of motive was not required in this case because the plaintiff did not invoke the civil arson defense but, rather, denied the defendants' claim pursuant to the policy's intentional loss exclusion.[6]

At the close of evidence, the defendants filed a request to charge, inter alia, on the issue of the civil arson defense, asking the trial court to instruct the jury on motive in addition to incendiarism and opportunity.

[6] The trial court stated: "I find . . . [t]hat technically the [plaintiff did not accuse] the defendants of committing arson. In the [court's] review of the complaint, [the] plaintiff claims that the exclusion to the policy applies because it was an intentional loss. Intentional loss is defined in the policy [as loss] . . . by or at the direction of the insured. . . . It doesn't say motive, it says intent. The fact that it was not accidental means it was done with intent. That [however] doesn't necessarily mean that there was a motive. . . .

"The [plaintiff] simply has to prove that the fire was caused by the defendants or their agents and [that] it was intentional. . . . [*Corosa Realty* v. *Covenant Ins. Co.*, 16 Conn. App. 684, 548 A.2d 473 (1988), and *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, 5 Conn. App. 579, 501 A.2d 1214 (1985), cert. denied, 198 Conn. 803, 503 A.2d 172 (1986)], are not applicable [in this case] for two reasons. One, [those cases discuss] arson and [two] they [discuss] arson where motive has been proven . . . . I don't think the word arson has ever been mentioned by any of the plaintiff's witnesses [in this case]. . . . So I find . . . that the policy definition for [exclusionary acts] differs from the definition of arson. Arson may carry motive [as an element] based upon those cases, but all [that is required] under the policy exclusion is [intent] and I find a difference between the meaning of intent . . . and motive, so for that reason, based upon the law, I am denying the [defendants'] motion for a directed verdict at this time."

In their request, the defendants provided the trial court with specific language from the special defenses submitted by the defendant insurance companies in *Verrastro* v. *Middlesex Ins. Co.*, 207 Conn. 179, 540 A.2d 693 (1988), *Corosa Realty* v. *Covenant Ins. Co.*, 16 Conn. App. 684, 548 A.2d 473 (1988), and *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, 5 Conn. App. 579, 501 A.2d 1214 (1985), cert. denied, 198 Conn. 803, 503 A.2d 172 (1986), that the Supreme Court and the Appellate Court had interpreted as assertions of the civil arson defense. The defendants in the present case argued that the language contained in the special defenses submitted by the insurance companies in those cases was similar to the language contained in the second special defense offered by the plaintiff in this case. See footnote 4 of this opinion. The defendants claimed that the trial court, therefore, should interpret the plaintiff's second special defense as an assertion of the civil arson defense and instruct the jury accordingly.

The trial court denied the defendants' request to charge[7] and subsequently instructed the jury, with regard to the issue of the plaintiff's burden of proof, as follows: "On [the issue of the plaintiff's denial of the defendants' claims under the policy] the burden of proof is on the [plaintiff] to prove that the exclusion applies. In other words, the burden of proof is on the [plaintiff] to prove that the [defendants] originated or set the fire or it was set at their direction and it was done intentionally. . . . [T]he issue of motive has come up. The [plaintiff] does not have to prove a motive on the part of the [defendants] to prove that this fire was

---

[7] Before the trial court instructed the jury, plaintiff's counsel highlighted what he believed was evidence of the defendants' poor financial condition during his closing arguments to the jury. Thereafter, he stated to the jury: "That's something I want you to consider. But motive is not something that I have to prove. I don't have to prove to you why they did it. I [only] have to prove it's an incendiary fire, and I have to prove that they had opportunity and they had the only opportunity."

caused by them and it was done intentionally. Under the terms of the policy, the [plaintiff] merely has to prove that the fire was caused by the [defendants] or at their direction, and it was done with the intent to cause the loss. They do not have to prove what the reason or motive was. . . . [E]vidence [of motive] came in before you even though the [plaintiff] did not have to prove motive. However, you may consider motive or reason . . . when you are assessing the credibility of all the circumstances, the credibility of the witnesses and the parties . . . ." At the close of its instructions, the trial court provided the jury with a special verdict form on which to answer special interrogatories relating to the allegations of the complaints. After the court's instructions, the defendants took exception to the failure of the court to instruct on the issue of motive and again argued that the plaintiff had asserted the civil arson defense.

The jury returned its verdicts on the special verdict form. In both actions, the jury found for the plaintiff on its claim that the damage to the defendants' house arose out of an act committed by or at the direction of the defendants with the intent to cause a loss.

Thereafter, the defendants moved to set aside the verdict and for judgment notwithstanding the verdict. Once again, the defendants claimed that the court improperly refused to instruct the jury on the civil arson defense and its element of motive. The defendants maintained that the trial court's decision prejudicially affected the jury's verdict. The trial court denied both motions and rendered judgments for the plaintiff. This appeal followed.

The defendants maintain that the language of the plaintiff's policy and its second special defense required the application of the civil arson defense to this case. See footnote 4 of this opinion. The defendants make

this argument based on the treatment given by this court and the Appellate Court to special defense language in previous decisions as assertions of the civil arson defense. Further, the defendants maintain that the civil arson defense must apply to this case because the policy's language comports with the traditional definition of arson. The defendants also assert that the plaintiff tried its case on the theory of arson and repeatedly referred to the case as an arson case. On the basis of these reasons, the defendants claim that the trial court improperly denied their request to charge the jury with the civil arson defense and its element of motive. We reject the defendants' claim.

Our analysis of the defendants' claim begins in light of the well established rule that "jury instructions are to be read as a whole, and instructions claimed to be improper are read in the context of the entire charge. . . . A jury charge is to be considered from the standpoint of its effect on the jury in guiding it to a correct verdict. . . . The test to determine if a jury charge is proper is whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Jury instructions need not be exhaustive, perfect or technically accurate, so long as they are correct in law, adapted to the issues and sufficient for the guidance of the jury." (Citations omitted; internal quotation marks omitted.) *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 219–20, 635 A.2d 798 (1994). Moreover, "[a] request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given." (Internal quotation marks omitted.) *State* v. *Gant*, 231 Conn. 43, 47, 646 A.2d 835 (1994), cert. denied, 514 U.S. 1038, 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995).

In their brief, the defendants quote the special defense language used by the insurance companies in *Verrastro* v. *Middlesex Ins. Co.*, supra, 207 Conn. 179,

*Corosa Realty* v. *Covenant Ins. Co.*, supra, 16 Conn. App. 684, and *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 5 Conn. App. 579. The defendants assert that the quoted language from the policies in those cases is similar to that used in the second special defense the plaintiff had filed with its answer in the present case. The defendants' reliance on those cases to support their claim, however, is misplaced. Our review of the special defenses that the insurance companies had filed in those cases reveals language that asserts the civil arson defense either explicitly or impliedly.[8] The plaintiff's second special defense, which

[8] As attachments to their memorandum in support of their request to charge, the defendants supplied the trial court with copies of the pleadings containing the special defenses submitted by the insurance companies in *Verrastro* v. *Middlesex Ins. Co.*, supra, 207 Conn. 179, *Corosa Realty* v. *Covenant Ins. Co.*, supra, 16 Conn. App. 684, and *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 5 Conn. App. 579, which were included in the court file in this case.

In *Verrastro*, after it had denied the allegations of the plaintiff's complaint and had submitted special defenses, the defendant Middlesex Insurance Company revised its third special defense to provide as follows: "As to the third special defense, the plaintiffs independently or through their partnership relationship or through agency or through other means committed acts either directly or indirectly which *caused the destruction of the property in question by fire.* Those acts were included but not limited to either themselves or a third party entering the premises and *with the use of gas and fire, attempted to destroy the property located therein.*" (Emphasis added.) *Verrastro* v. *Middlesex Ins. Co.*, Conn. Supreme Court Records & Briefs, December Term, 1987, Pt. 6, Record p. 12.

In *Corosa Realty*, the defendant Covenant Insurance Company's first special defense, quoting the relevant policy language, provided in relevant part: " 'Concealment or Fraud. We do not provide coverage for any insured who has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance. . . .' [The plaintiff] . . . *set or caused to be set the fire at the insured property*, with the intent to defraud [the] defendant and wrongfully to obtain money from [the] defendant in violation of the terms and conditions of the policy." (Emphasis added.) *Corosa Realty* v. *Covenant Ins. Co.*, Conn. Appellate Court Records & Briefs, September Term, 1988, Record pp. 12–13.

Finally, in *Souper Spud, Inc.*, in response to the plaintiff's revised complaint, the defendant Aetna Casualty and Surety Company filed the following special defense: "The fire referred to in the plaintiff's complaint *resulted from arson* in which the plaintiff and its agents and employees were directly

the defendants claim is an assertion of the civil arson defense, provides as follows: "The . . . policy does not provide coverage for acts or events resulting in property damage either expected or intended by the [defendants]. The [defendants'] claim is not covered to the extent that said claim is based on damage expected or intended by the [defendants]." The affirmative defense of civil arson essentially is a defense of fraud, and, therefore, the insurer must formally raise the defense by specially pleading it or it is waived. See Practice Book § 10-50; *Connecticut National Bank* v. *Voog*, 233 Conn. 352, 367, 659 A.2d 172 (1995); *Yellow Page Consultants, Inc.* v. *Omni Home Health Services, Inc.*, 59 Conn. App. 194, 199, 756 A.2d 309 (2000); 10 G. Couch, Insurance (L. Russ & T. Segalla eds., 3d Ed. 1998) § 149:45, p. 149-53. We conclude that the plaintiff's second special defense does not contain any language that asserts or in any way implies the civil arson defense but instead alleges an exclusion from coverage contained within the terms of the policy. The civil arson defense to a claim under a homeowner's policy conceptually is distinct from defenses based on exclusions of coverage in the policy. "Apart from all potential policy provisions that may apply . . . exclusion of coverage for the intentional burning of the insured property by the insured is ultimately grounded in the principle that such a recovery conflicts with clear public policy. Therefore,

---

or indirectly involved. *Said arson voids said insurance policy issued by the defendant.*" (Emphasis added.) *Souper Spud, Inc.* v. *Aetna Casualty & Surety*, Conn. Appellate Court Records & Briefs, October Term, 1985, Record p. 10.

Based on our review of the emphasized quoted language set forth in *Verrastro, Corosa Realty* and *Souper Spud, Inc.*, it is apparent that the insurance companies in those cases either directly or impliedly had asserted the civil arson defense. All of the special defenses in those cases specifically alleged a fire caused by the insured. The second special defense asserted by the plaintiff in the present case, in contrast, does not reference a fire or arson and, instead, specifically alleges exclusion of coverage under the policy.

the willful destruction of the property by the insured relieves the insurer from liability, though there is no stipulation to that effect in the policy." 10 G. Couch, supra, § 149:45, pp. 149-54 through 149-55.[9] We agree with the trial court's conclusion that the plaintiff did not assert the civil arson defense in its special defenses to the defendants' counterclaim.

We also conclude that the language of the policy did not require that the plaintiff establish motive. The trial court correctly instructed the jury with regard to the exclusionary language from the policy in order for the jury to reach a determination as to whether the defendants' loss was covered under the policy. "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. *Schultz* v. *Hartford Fire Ins. Co.*, 213 Conn. 696, 702, 569 A.2d 1131 (1990). The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . *O'Brien* v. *United States Fidelity & Guaranty Co.*, 235 Conn. 837, 842, 669 A.2d 1221 (1996). It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. *Flint* v. *Universal Machine Co.*, [238 Conn. 637, 643, 679 A.2d 929 (1996)]. The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the

---

[9] Without citation to any authority, the concurring opinion rejects this conceptual difference between the civil arson defense and a defense based on exclusion from coverage under the policy and imports into the policy elements of proof that are not found anywhere within the provisions of the policy.

insurance company drafted the policy. . . . *Hansen* v. *Ohio Casualty Ins. Co.*, 239 Conn. 537, 542–43, 687 A.2d 1262 (1996). [T]his rule of construction favorable to the insured extends to exclusion clauses. . . . *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 770, 653 A.2d 122 (1995). Unlike certain other contracts . . . where . . . the intent of the parties and thus the meaning of the contract is a factual question subject to limited appellate review . . . construction of a contract of insurance presents a question of law . . . which this court reviews de novo. . . . *Flint* v. *Universal Machine Co.*, supra, 642." (Internal quotation marks omitted.) *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 324–25, 714 A.2d 1230 (1998).

Section I of the "General Exclusions" portion of the policy issued by the plaintiff provides in relevant part: "We do not insure for loss caused directly or indirectly by any of the following, regardless of any other cause or event contributing concurrently or in any sequence to the loss . . . (h) Intentional Loss, meaning any loss arising out of any act committed: (1) by or at the direction of an 'insured'; and (2) with the intent to cause a loss." The language of the policy clearly does not contain the word "motive" or any other analogous term.[10] Under the language of the policy, the plaintiff did not need to prove motive as an element of its claim that the defendants' loss fell within the policy exclusion.

Thus, we agree with the trial court that the plaintiff needed only to prove by a preponderance of the evidence that the loss was committed by or at the direction

---

[10] We note that the term motive is not interchangeable with intent. Black's Law Dictionary (7th Ed. 1999) defines motive to mean "[s]omething, esp. willful desire, that leads one to act," and intent to mean "[t]he state of mind accompanying an act, esp. a forbidden act. . . . Whereas motive is the inducement to do some act, intent is the mental resolution or determination to do it. When the intent to do an act that violates the law exists, motive becomes immaterial."

of one of the defendants with the intent to cause a loss. We conclude, therefore, that the trial court properly instructed the jury with regard to the plaintiff's burden of proof.[11]

## II

The defendants next claim that the trial court abused its discretion by admitting into evidence a page from a fire marshal's report under the business records exception to the hearsay rule. Specifically, the defendants maintain that the plaintiff did not qualify the exhibit properly pursuant to General Statutes § 52-180[12]

---

[11] Because we conclude that the plaintiff did not assert the civil arson defense, but, rather, denied coverage under the provisions of the policy, we do not reach the issue of whether the insured's motive for setting the fire is a mandatory element of the civil arson defense.

[12] General Statutes § 52-180 provides: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility.

"(c) Except as provided in the Freedom of Information Act, as defined in section 1-200, if any person in the regular course of business has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of them to be recorded, copied or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is otherwise required by statute. The reproduction, when satisfactorily identified, shall be as admissible in evidence as the original in any judicial or administrative proceeding, whether the original is in existence or not, and an enlargement or facsimile of the reproduction shall be likewise admissible

as a business record and failed to establish that the author of the report had a duty to draft the report. The defendants assert that the admission of the exhibit was extremely prejudicial to their case and, thus, that a reversal of the trial court's judgments is warranted. We conclude, however, that the defendants failed to preserve this claim and we therefore decline to address it.

The following facts are relevant to our resolution of this issue. At trial, the plaintiff called Officer Dennis Bianchi of the Avon police department to testify concerning his observations of the defendants' house when he arrived on the scene following the arrival of Sergeant Gregory Soderburg, the first officer to arrive. During the plaintiff's redirect examination of Bianchi, the plaintiff questioned the officer with regard to a draft investigation report prepared by the Avon fire marshal's office, which, on the third page, listed items of concern that indicated that the fire may have been caused by arson.[13] The plaintiff offered the report as an exhibit. Outside the presence of the jury, the plaintiff asked Bianchi preliminary questions regarding the report in order to establish its admissibility. Bianchi testified that the

in evidence if the original reproduction is in existence and available for inspection under direction of court. The introduction of a reproduced record, enlargement or facsimile shall not preclude admission of the original.

"(d) The term 'business' shall include business, profession, occupation and calling of every kind."

[13] The third page of the draft fire investigation report noted, in list form, six items of concern: "1. Very limited on furniture contents.

"2. Was the monitored fire alarm on; if so, did [the alarm company] call fire department?

"3. Delay in reporting fire by owner. Owner statement is not consistent.

"4. Await State Fire Marshal report.

"5. Await Travelers Insurance report on inspection of vehicles. Avon Deputy Fire Marshal Washburn release vehicles to Travelers for in-depth inspection.

"6. Check with homeowner if they had cardboard under Mercedes (was found by State Fire Marshal's Office after cars are removed)."

report was prepared by Deputy Fire Marshal D. Washburn and Fire Marshal Kevin Kowalski. Bianchi, however, did not know which fire marshal actually wrote the draft report.

After hearing Bianchi's answers to the plaintiff's preliminary questions, the trial court stated: "This [report] is obviously written by [Fire Marshal] Kowalski because [the report says on page one] 'this writer responded to 217 Deercliff Road, Avon, to assist Deputy Fire [Marshals] J[ames] DiPace and D. Washburn' . . . . [O]bviously Washburn didn't write it because [he would not have] referred to himself . . . . [S]o it is clear it is Deputy Fire Marshal Kowalski who wrote this. It is a fire investigation report prepared by someone who has a duty to prepare [the] same."

After cross-examining Bianchi with regard to the report, the defendants objected to the report on the grounds that it was a draft document and was based upon hearsay statements from other fire and police personnel that arrived at the scene of the fire. The plaintiff withdrew the first two pages of the report and thereafter responded that Kowalski had a duty to prepare the investigation report and, in preparing the report, could rely on statements made to him by police and fire personnel who had a duty to report what they observed. The trial court agreed with the plaintiff and admitted the third page of the report under the business record exception to the hearsay rule over the defendants' objection. The defendants took an exception, after which the trial court gave the jury a limited instruction concerning the exhibit.[14]

---

[14] The trial court delivered the following limiting instructions to the jury: "I have allowed into evidence a report from a fire investigator by the name of . . . Deputy Fire Marshal [Kowalski] with the Avon fire department . . . . There is only a section of the report being admitted, the third page. The other two [pages] are not. . . . Please note the word[s] draft fire investigation report. I don't know whether there was a final report, but it hasn't been brought forward as of yet. [The perspective of this report] was as a result of . . . Kowalski arriving [at the scene] at 3 p.m. on the day of

On appeal, the defendants maintain that the trial court abused its discretion by admitting the exhibit into evidence when the plaintiff had not qualified the exhibit properly pursuant to § 52-180 and had failed to establish that the author of the report had a duty to draft it. "Our review of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection [to the trial court]. . . . This court reviews rulings solely on the ground on which the party's objection is based." (Internal quotation marks omitted.) *State* v. *Lewis*, 245 Conn. 779, 791, 717 A.2d 1140 (1998).

Our careful examination of the record reveals that the defendants did not object to the plaintiff's offer of the report on the basis that it was not qualified properly as a business record nor on the basis that the author did not have a duty to write the report. In the trial court, the defendants objected to the exhibit on the limited grounds that it was a draft document and was based upon hearsay statements. Defendants' counsel in fact stated during his discussion with the trial court that, "I don't dispute that [Kowalski] has a business duty to

the fire, so he did not make personal observations of what happened until he got there at 3 o'clock. Now, it is not signed, but . . . based upon the first two pages [of the report], it was a report [by] . . . Kowalski. Perhaps he didn't sign it because it was a draft.

"Now, the issues that you are to be concerned with are his comments and [his list of] items of concern. Now, first of all, you've got to understand that this is his opinion, and it is his opinion to some degree . . . . [Everything] is not based upon his own observations totally. . . . [T]here is an exception to the hearsay rule which [allows into evidence certain reports] if the person has a duty to make [the] report . . . . Kowalski had a duty to make some sort of report, even though it is only a draft, and he can base that on statements by fire department personnel who have a duty to make a report if you will, even though it may be verbal, what they say to him. . . . I am allowing this into evidence because it is a report, although a draft, by an official who has the duty to make reports, but I [want] you to understand that where he got this information may be from other firefighters or other officials and/or from his own observations."

make a report." Accordingly, we decline to review this unpreserved evidentiary claim.[15]

The judgments are affirmed.

In this opinion NORCOTT and FLYNN, Js., concurred.

KATZ, J., with whom SULLIVAN, J., joins, concurring. I disagree with the majority's narrow reading of the special defense in this case and would conclude that the civil arson defense is indeed implicated. I do, however, agree that the trial court's instructions were not improper because I do not consider that motive is a necessary element of that defense. Accordingly, I concur in the result.

I

I begin with our jurisprudence regarding the law of pleadings, followed by our jurisprudence regarding insurance policies. "[T]he interpretation of pleadings is always a question of law for the court . . . . *Cahill* v. *Board of Education*, 198 Conn. 229, 236, 502 A.2d 410 (1985). The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . *Beaudoin* v. *Town Oil Co.*, 207 Conn. 575, 587–88, 542 A.2d 1124 (1988), and cases cited therein. Although essential allegations may not be supplied by conjecture or remote implication; *Cahill* v. *Board of Education*, supra, 236; the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do sub-

---

[15] We note that the defendants had raised these same claims in the the trial court in their motion to set aside the verdict. The defendants were required, however, to raise these issues before the trial court when they objected to the report. The defendants' discussion of these issues during their motion to set aside the verdict came too late and did not preserve the issues the defendants now assert on appeal. See *Konover Development Corp.* v. *Zeller*, supra, 228 Conn. 232; *State* v. *Lizotte*, 200 Conn. 734, 742A, 517 A.2d 610 (1986).

stantial justice between the parties. *Price* v. *Bouteiller*, 79 Conn. 255, 257, 64 A. 227 (1906). As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery. *Tedesco* v. *Stamford*, 215 Conn. 450, 459, 576 A.2d 1273 (1990), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd, 222 Conn. 233, 610 A.2d 574 (1992); *Giulietti* v. *Connecticut Ins. Placement Facility*, 205 Conn. 424, 434, 534 A.2d 213 (1987) . . . . [I]f the parties at trial have adopted a certain construction of the pleadings; see, e.g., *Milardo* v. *Branciforte*, 109 Conn. 693, 695, 145 A. 573 (1929); we should give deference to that construction." (Citations omitted; internal quotation marks omitted.) *Dornfried* v. *October Twenty-Four, Inc.*, 230 Conn. 622, 629–30, 646 A.2d 772 (1994). Finally, the practice of reading pleadings broadly applies to special defenses as well. *Doe* v. *Yale University*, 252 Conn. 641, 683, 748 A.2d 834 (2000).

"Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [plaintiff] expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted." (Citations omitted; internal quotation marks omitted.) *Hertz Corp.* v. *Federal Ins. Co.*, 245 Conn. 374, 381–82, 713 A.2d 820 (1998). "[T]his rule of construction favor-

able to the insured extends to exclusion clauses." (Internal quotation marks omitted.) *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 770, 653 A.2d 122 (1995).

Applying these principles to the facts of this case, I would conclude that the civil arson defense was implicated in this case. First, I believe that the plaintiff Travelers Insurance Company's complaint in the first action specifically raises arson as the basis for its claim to recover the cash advances paid to the defendants, Robert Namerow and Barbara Namerow, under the policy issued to them. As the majority notes, this case is a consolidated action.[1] Both actions involve the *same issue* and the *same parties*. Accordingly, I believe that we must consider the plaintiff's complaint in the first action in determining whether the plaintiff raised arson in the second action as a means for denying recovery under the policy. *Beaudoin* v. *Town Oil Co.*, supra, 207 Conn. 587–88 (pleadings should be read broadly and realistically, rather than narrowly and technically); *Price* v. *Bouteiller*, supra, 79 Conn. 257 (complaint must be read in its entirety to give effect to pleading with reference to general theory upon which it proceeded and do substantial justice between parties).

In examining the plaintiff's complaint to determine whether the plaintiff did, in fact, raise "civil arson," I believe that the language employed by the plaintiff cannot be distinguished from that used by the insurance companies in *Verrastro* v. *Middlesex Ins. Co.*, 207 Conn. 179, 540 A.2d 693 (1988), *Corosa Realty* v. *Covenant Ins. Co.*, 16 Conn. App. 684, 548 A.2d 473 (1988), and *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, 5

---

[1] Travelers Insurance Company brought the action against the Namerows in the first case. In the second case, the Namerows brought the breach of contract action against Travelers Insurance Company. Like the majority; see footnote 1 of the majority opinion; we refer herein to Travelers Insurance Company as the plaintiff and to the Namerows as the defendants.

Conn. App. 579, 501 A.2d 1214 (1985), cert. denied, 198 Conn. 803, 503 A.2d 172 (1986).[2] Accordingly, in line with those cases, I believe that we must conclude that the plaintiff in this case raised civil arson as a means for avoiding liability under the policy.

In the present case, the plaintiff's complaint provides: "The [p]olicy excluded from coverage any loss arising out of any act committed by or at the direction of the insured with the intent to cause a loss. . . . Subsequent to making . . . payments to the defendants, the plaintiff's investigation revealed that the *fire was incendiary in origin* and that the losses claimed by the defendants, and for which the plaintiff paid a total of Fifty Thousand ($50,000.00) Dollars in advance payments on the defendants' claims, [were] caused by acts either committed by the defendants or at their direction, with the *intent to cause a loss*." (Emphasis added.) By comparison, in *Verrastro*, the insurance company's analogous special defense alleged: "[T]he plaintiffs independently or through their partnership relationship or through agency or through other means committed acts either directly or indirectly which caused the destruction of the property in question by fire. Those

---

[2] It is important to note that in *Verrastro* v. *Middlesex Ins. Co.*, supra, 207 Conn. 179, *Corosa Realty* v. *Covenant Ins. Co.*, supra, 16 Conn. App. 684, and *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 5 Conn. App. 579, the insurance companies therein had refused to pay the insureds under the policies and, therefore, were sued by the policyholders on that basis. Accordingly, civil arson was referred to in those cases as a *defense* to recovery under the policies. As I have noted previously, however, the present case is a consolidated action in which the insurance company first brought a claim against the defendants to recover moneys already paid under the policy. See footnote 1 of this concurrence. Therefore, in order to prevail, the "civil arson defense" need not be raised as a "defense." The elements required to prove civil arson are the same no matter whether they are pleaded by a plaintiff in the complaint, or asserted by a defendant as a defense. See *Aetna Casualty & Surety Co.* v. *Pizza Connection, Inc.*, 55 Conn. App. 488, 492–93, 740 A.2d 408 (1999). Indeed, under either scenario, the insurance company is trying to avoid liability under the policy based on alleged arson on the part of the insured.

acts were included but not limited to either themselves or a third party entering the premises and with the use of gas and fire, attempted to destroy the property located therein." *Verrastro* v. *Middlesex Ins. Co.*, Conn. Supreme Court Records & Briefs, December Term, 1987, Pt. 6, Record p. 12; see footnote 8 of the majority opinion. In *Verrastro*, there was no mention of "arson" in the special defense. Despite that fact, this court noted that "the defendant sought to bar the plaintiffs' claim because of arson." *Verrastro* v. *Middlesex Ins. Co.*, supra, 207 Conn. 181. Throughout the opinion in that case, this court repeatedly referred to the insurance company's special defense as its "arson special defense." See id., 182, 183, 184.

Similarly, in *Corosa Realty*, the defendant insurer alleged that the plaintiff insured had "set or caused to be set the fire at the insured property . . . *in violation of the terms and conditions of the policy.*"[3] (Emphasis added.) *Corosa Realty* v. *Covenant Ins. Co.*, Conn. Appellate Court Records & Briefs, September Term, 1988, Record pp. 12–13; see footnote 8 of the majority opinion. The pleadings in that case did not couch the insurer's claim as one sounding precisely in the civil arson defense. Rather, the insurer alleged that the insured had violated the terms of the insurance policy. *Corosa Realty* v. *Covenant Ins. Co.*, supra, 16 Conn. App. 685. Despite the insurer's choice of language, the Appellate Court recognized its claim as the "arson defense." Id., 686–87.

Finally, in *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 5 Conn. App. 584–85, the Appellate

---

[3] I note that this language is nearly identical to the language in the plaintiff's complaint in this case. Again, I reiterate that the plaintiff in this case alleged in its complaint that "the *fire was incendiary in origin* and that the losses claimed by the defendants . . . [were] caused by acts either committed by the defendants or at their direction, with the *intent to cause a loss.*" (Emphasis added.)

Court specifically noted that the defendant's special defenses *"mirrored certain exclusionary provisions contained in the insurance policy."* (Emphasis added.) The Appellate Court, nevertheless, recognized that the defendant had raised the civil arson defense. Id.[4]

Second, turning to the plaintiff's second special defense, I believe that it also implicates civil arson. Specifically, the second special defense alleges an exclusion from coverage contained within the terms of the policy—namely, that the policy excludes from coverage the defendants' intentional acts that result in property damage. The exclusion in the policy is not act or crime specific, but is meant to encompass, or rather, exclude *all* intentional conduct performed by, or at the direction of, the insured. Put another way, the general language of the policy applies to all sorts of intentionally caused losses that are presented. When the facts of a particular case present a fire loss, as in the present case, the general language of the exclusion necessarily must connote civil arson. Because the special defense of civil arson represents a vehicle, constructed on sound public policy, for avoiding a contractual obligation premised on proof sufficient in a civil action that an exclusion in the policy is applicable to the claim, the defense and the policy exclusion are not conceptually distinct. By not reading the exclusion to include the civil arson defense, the majority opinion, in essence, reads the defense out of the policy. Moreover, the majority's narrow construction of the general language of the exclusion in favor of the insurer directly contravenes

---

[4] "In many policies, arson is expressly stated to be an excluded cause of loss, and under others, it is deemed to fall within a clause excluding coverage for loss deliberately caused by the insured. Some policies do not specifically exclude loss caused by arson of the insured." 10 G. Couch, Insurance (L. Russ & T. Segalla eds., 3d Ed. 1998) § 149:45, p. 149-53. Accordingly, the differences in the precise language of the allegations in *Verrastro, Corosa Realty, Souper Spud, Inc.*, and the present case are likely due to the differences in the actual language of the exclusions.

the aforementioned tenet that an insurance policy must be construed in favor of the insured.

In summary, I recognize that the plaintiff did not use the term "arson" in its second special defense. The plaintiff did, however, note in its complaint that "its investigation revealed that the fire was incendiary in origin" and that the loss at issue was the result of the defendants' intentional act. Arson is defined under both General Statutes §§ 53a-111 (a) and 53a-112 (a) as starting a fire or causing an explosion "with intent to destroy or damage a building . . . ." See also Merriam-Webster's Collegiate Dictionary (10th Ed. 1995) (defining arson as "the willful or malicious burning of property [as a building]"). By comparison, "incendiary" is defined as "one who maliciously and willfully sets another person's building on fire." Black's Law Dictionary (6th Ed. 1990); see also Black's Law Dictionary (7th Ed. 1999) (defining "incendiary" as "one who deliberately and unlawfully sets fire to property"). Accordingly, I believe that the plaintiff explicitly raised "civil arson" in its complaint. Moreover, when an "intentional loss," as used in the policy, is committed by the burning of a building, the intentional loss exclusion is the very definition of arson, i.e., the intentional burning of a building. Accordingly, I believe that the plaintiff's second special defense implicated the civil arson defense.

## II

Because I would conclude that the civil arson defense was implicated in this case, I therefore must next determine whether motive properly plays a role. I would conclude that motive is not an essential element of the defense and that, accordingly, the trial court was not required to instruct the jury on motive.

The case from which Connecticut courts have drawn the principle that motive is a required element of proof when insurance coverage is denied because of civil

arson is *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 5 Conn. App. 585; see also *Verrastro* v. *Middlesex Ins. Co.*, supra, 207 Conn. 180; *Aetna Casualty & Surety Co.* v. *Pizza Connection, Inc.*, 55 Conn. App. 488, 493–95, 740 A.2d 408 (1999); *Corosa Realty* v. *Covenant Ins. Co.*, supra, 16 Conn. App. 687. In *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 585, the Appellate Court explained that "in order to establish a prima facie case of arson for purposes of denying coverage under an insurance policy, the insurer must establish that the fire was incendiary, that the insured, its agents or officers had an opportunity to cause the fire, and that such individuals had a motive for setting the fire." These elements are in accord with the leading treatises on insurance. See 21B J. Appleman & J. Appleman, Insurance Law and Practice (1980) § 12682, p. 91 ("to establish a prima facie case of incendiarism for the purpose of denying coverage under a fire policy it is sufficient to show: arson by someone; motive by the suspect; and unexplained surrounding circumstantial evidence implicating the suspect"); 10 G. Couch, Insurance (L. Russ & T. Segalla eds., 3d Ed. 1998) § 149:46, p. 149-55 ("[t]he affirmative defense of incendiarism or arson committed by the insured is composed of three elements: [1] incendiary nature of the fire, [2] motive on the part of the insured to set the fire, and [3] opportunity for the insured, or someone acting on his or her behalf, to have set the fire").

A closer review of Couch's treatise, however, reveals an inconsistency. Although the three elements of the arson defense are clearly articulated in § 149:46, the treatise retreats from its stance regarding motive as an element in § 149:59. "In an action by an insured seeking compensation under a fire policy, where the insurer defends on the basis that [the] insured caused the fire, *motive need not be proven as a separate element*, although it may form part of the circumstances from

which it is inferred that the insured caused the fire." (Emphasis added.) 10 G. Couch, supra, § 149:59, pp. 149-85 through 149-86. As authority for this proposition, the treatise cites one case: *Giambra* v. *Aetna Casualty & Surety Co.*, 315 Pa. Super. 231, 232, 461 A.2d 1256 (1983) (rejecting notion that motive must be proved as separate element in civil case). 10 G. Couch, supra, § 149:59, p. 149-85. It seems that a minority of states follow this rule and do not require motive as a separate element of the civil arson defense. See, e.g., *O-So Detroit, Inc.* v. *Home Ins. Co.*, 973 F.2d 498 (6th Cir. 1992) (applying Michigan law).

Although I recognize that many jurisdictions, however, do require motive as a separate element; see 10 G. Couch, supra, § 149:46, p. 149-55 (reciting general rule including motive as element and relying upon authority from state and federal cases in fifteen jurisdictions); I do not agree that Connecticut should require motive as an element of the civil arson defense. Rather, its role is best served to bolster cases in which direct evidence of arson is lacking. *O-So Detroit, Inc.* v. *Home Ins. Co.*, supra, 973 F.2d 501 ("circumstantial proof of motive plus access or opportunity is adequate to establish arson," but these elements are not mandatory; can prove arson by showing insured "set fire to the building or caused it to be set on fire" [internal quotation marks omitted]); *Jamaica Time Petroleum, Inc.* v. *Federal Ins. Co.*, 366 F.2d 156, 157 (10th Cir. 1966), cert. denied, 385 U.S. 1024, 87 S. Ct. 753, 17 L. Ed. 2d 674 (1967) ("insurer has the burden of establishing the defense of arson by either direct or circumstantial evidence"; "evidence of deliberate destruction is sufficient"); *Moore* v. *Farmers Ins. Exchange*, 111 Ill. App. 3d 401, 408, 444 N.E.2d 220 (1982) (motive and opportunity can be proven by circumstantial evidence but sufficient to show fire was of incendiary nature and that plaintiff caused or procured fire); *Johnson* v. *Auto-Owners Ins. Group*, 202 Mich. App. 525, 527, 509 N.W.2d

538 (1993), cert. denied, 445 Mich. 936, 521 N.W.2d 606 (1994) ("Where an arson defense is raised by an insurer, the dispositive determination is whether the plaintiff set the fire or caused it to be set. . . . Motive and opportunity are merely two factors to be considered in such a determination." [Citation omitted.]); *Freeman* v. *St. Paul Fire & Marine Ins. Co.*, 72 N.C. App. 292, 297–99, 324 S.E.2d 307, cert. denied, 313 N.C. 599, 330 S.E.2d 609 (1985) (ordinarily there is no direct evidence of cause of fire; motive and opportunity are merely circumstances to be considered, but are not essential elements of arson defense); *Giambra* v. *Aetna Casualty & Surety Co.*, supra, 315 Pa. Super. 234 (1983) (motive need not be proven as separate element in civil arson cases, but may form part of circumstances from which it is inferred that subject party caused fire).

As a final point, I note that motive plays no role in arson cases in the criminal arena. See General Statutes § 53a-215.[5] Accordingly, it hardly seems an important

---

[5] General Statutes § 53a-215 provides: "Insurance fraud: Class D felony. (a) A person is guilty of insurance fraud when the person, with the intent to injure, defraud or deceive any insurance company: (1) Presents or causes to be presented to any insurance company, any written or oral statement including computer-generated documents as part of, or in support of, any application for any policy of insurance or a claim for payment or other benefit pursuant to such policy of insurance, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such application or claim; or (2) assists, abets, solicits, or conspires with another to prepare or make any written or oral statement that is intended to be presented to any insurance company in connection with, or in support of, any application for any policy of insurance or any claim for payment or other benefit pursuant to such policy of insurance, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such application or claim for the purposes of defrauding such insurance company.

"(b) For the purposes of this section, 'statement' includes, but is not limited to, any notice, statement, invoice, account, estimate of property damages, bill for services, test result, or other evidence of loss, injury, or expense.

"(c) For the purposes of this section, 'insurance company' means 'insurance company' as defined in section 38a-1.

"(d) Insurance fraud is a class D felony."

enough consideration to warrant status as a required element in civil arson cases. Therefore, because I believe that motive is not an essential element in civil arson cases, the court's instructions were sufficient.

Accordingly, I concur with the majority that the judgment of the trial court should be affirmed.