[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION I INTRODUCTION AND FACTUAL BACKGROUND
The plaintiffs in these consolidated cases seek a declaratory judgment that the defendant, American Equity Insurance Company (American Equity), has a duty to defend its insured, Seneco Corporation d/b/a The Stadium (Seneco). On March 16, 1997, Kimberly Bleau, Darlene Rodriguez and Marci Wentland went to the bar known as The Stadium. The Stadium consisted of two areas: a regular bar area and a "juice bar" area, where minors were allowed access. Adults wore wristbands to distinguish them from minors. Theoretically, the bracelets were supposed to prevent the minors from obtaining alcoholic beverages. On the night in question, Rodriguez obtained alcoholic beverages from an adult patron of the bar. Later, when Rodriguez was driving home, with Bleau and Marci Wentland as passengers, Rodriguez lost control of the vehicle and veered into oncoming traffic, colliding head-on with a car driven by Amanda Kizska. All those involved in the accident suffered injuries, and Marci Wentland's injuries were fatal.
The plaintiffs, Bleau, Kizska and Russell Wentland, as administrator of Marci Wentland' s estate (Wentland), brought actions against Seneco and Antonio Senese. The court, Shortall, J., approved stipulated judgments negotiated by the parties in the three cases on June 12, 2000.[1]
Seneco subsequently went bankrupt and the plaintiffs separately sued American Equity, Seneco's insurer. In their amended complaints, the plaintiffs seek a declaratory judgment that American Equity breached its contractual duty to defend and its contractual duty to indemnify. The actions were consolidated on September 10, 2001.
The plaintiffs have alleged various negligent acts by Seneco. They claim that the bar was negligently designed and constructed in that the only dance floor, used by both adult and minor patrons, was located in the juice bar area. They next claim negligent operation and supervision alleging that on the night of the accident: Seneco did not continuously station employees at the entrances between the juice bar area, the billiards room, which was also a common area, and other areas of the bar; Seneco did not prevent adult patrons from carrying alcoholic beverages from other areas of the bar into the juice bar area and the billiards room; and Seneco failed to provide different cups for alcoholic and non-alcoholic beverages. The plaintiffs further allege that Seneco failed to warn adult patrons not to provide alcoholic beverages to minor CT Page 3460 patrons and failed to warn minor patrons of the consequences of accepting alcoholic beverages from adult patrons.
American Equity now moves for summary judgment on the ground that it has no duty to defend its insured because the alleged negligent acts fall under the liquor liability exclusion provision of the insurance policy. Wentland argues on the other hand, that the failure to warn allegations are separate from those related to causing or contributing to the intoxication of any person.[2] Specifically, Wentland argued on behalf of all three plaintiffs, that Seneco's failure to warn the minor plaintiffs of the consequences of accepting alcoholic beverages from adult patrons does not relate to the causing or contributing to the intoxication of any person.
Section 1(A)(2)(c)(1) of the commercial general liability coverage form of the insurance policy provided by American Equity to Seneco sets out the liquor liability exclusion. The exclusion has been amended by two endorsements, the latest of which was in effect at the time of the accident. As amended, the exclusion denies coverage for "`[b]odily injury' or `property damage' for which any insured may be held liable by reason of [c]ausing or contributing to the intoxication of any person." (Defendant's Motion for Summary Judgment, Exhibit A, Amendment of Liquor Liability Exclusion, November, 1995, hereinafter, Exhibit A.) In addition, there is no coverage for "`[b]odily injury' or [p]roperty damage' for which any insured may be held liable by reason of [t]he furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol." (Exhibit A.) The exclusion applies only to businesses that "(1) [m]anufacture, sell or distribute beverages; (2) [s]erve or furnish alcoholic beverages for a charge whether or not such activity (a) [r]equires a license; (b) [ills for the purpose of financial gain or livelihood; (3) [s]erve or furnish alcoholic beverages without a charge, if a license is required for such activity; or (4) [a]re an owner or lessor of premises used for such purposes." (Exhibit A.)
 II DISCUSSION
"In any action . ., any party may move for a summary judgment at any time. . . ." Practice Book § 17-44. "[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Miles v. Foley, 253 Conn. 381, 385,752 A.2d 503 (2000). "A `material' fact has been defined adequately and CT Page 3461 simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammer v. Lumberman's Mutual CasualtyCo., 214 Conn. 573, 578, 573 A.2d 699 (1990). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Id., 386. "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . ., and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) Id.
It is well settled that "an insurer's duty to defend, [is] much broader in scope and application than its duty to indemnify, [and] . . . [t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage." (Citations omitted; internal quotation marks omitted.) QSP, Inc. v. Aetna Casualty Surety Co., 256 Conn. 343,350-51, 773 A.2d 906 (2001). "[A]n insurer's duty to defend . ., is determined by reference to the allegations contained in the [injured party's] complaint. . . . The duty to defend an insured arises if the complaint states a cause of action which appears on its face to be within the terms of the policy coverage." (Citations omitted; internal quotation marks omitted.) Lightowler v. Continental Ins. Co., 255 Conn. 639, 643
n. 7, 769 A.2d 49 (2001).
"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." (Internal quotation marks omitted.)Travelers Ins. Co. v. Namerow, 257 Conn. 812, 826, 778 A.2d 168 (2001). "The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy." (Citations omitted; internal quotation marks omitted.) Id., 833. "It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy." Flint v. Universal Machine Co., 238 Conn. 637, 643,679 A.2d 929 (1996). "The if policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses." (Citations omitted; internal quotation marks omitted.) Imperial Casualty IndemnityCT Page 3462Co. v. State, 246 Conn. 313, 325, 714 A.2d 1230 (1998).
The plaintiffs do not claim that the liquor liability exclusion clause is ambiguous.[3] They instead claim that the alleged negligent behavior does not fall under the exclusion. Whether recovery for negligence is precluded by an unambiguous liquor liability exclusion clause depends on whether the allegations of negligence are independent from the sale and service of alcohol. See Decrecenzo v. Jakucenis, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 052689 (March 24, 2000, Grogins, J.). In Decrecenzo, an employee of the bar became intoxicated and subsequently assaulted the plaintiff. The court denied summary judgment on the premises liability count, holding that the insurer had a duty to defend its insured, despite a liquor liability exclusion clause in the policy. The court reasoned that "if one [were] to strike all allegations of alcohol in the premises liability count, the base assertion that the defendant failed to protect the plaintiff would exist independently and not be subject to the exclusionary language. That is, the allegations that [the employee] assaulted the plaintiff while intoxicated, and that [the owner] contributed somehow to [the employee's] state, are ultimately separate from allegations that [the owner] was negligent in failing to provide for the safety of its patrons." Id. Based on the same principle, however, the court concluded that the policy, which precluded recovery for bodily injury "arising as a result of the insured . ., causing or contributing to the intoxication of any person," specifically excluded the plaintiffs claim of a violation of the Dram Shop Act and her negligent supervision claim. Id.
Other jurisdictions have applied the same principle in determining the scope and applicability of a liquor liability exclusion. For example, in Ohio, the courts have focused on whether the alleged negligent acts are "sufficiently distinct, separate and independent from the sale or service of alcohol." Kovesdy v. Utica Fire Ins. Co., 695 N.E.2d 1165, 1168,119 Ohio App.3d 547 (1997) (finding no duty to defend in wrongful death suit where policy had liquor liability exclusion and plaintiff claimed bar was negligent in permitting minors access, failing to check identification, selling alcohol after individuals were intoxicated, permitting individuals to leave the premises and failing to notify the police.)[4]
The United States District Court of Nevada adopted the same rule inCapitol Indemnity Corp. v. Blazer, 51 F. Sup.2d 1080, 1089 (D. Nev. 1999) ("The important factor which reconciles the different results is the nexus between the allegations and the consumption of alcohol.") By way of illustration, the court in Capitol Indemnity contrasted two cases. In the first, the plaintiff sued a bar for failing to prevent an intoxicated patron, who later caused an automobile accident, from leaving CT Page 3463 the bar. Under such circumstances, the plaintiff's claims against the bar depended on the patron's intoxicated state. Thus, the liquor liability exclusion barred coverage. In the second case, an intoxicated patron left the bar, then was assaulted. The plaintiffs claims in such a case, the court reasoned, "did not depend upon the patron's intoxicated state because they could have been based on the theory that the bar negligently allowed the patron to leave the bar, despite knowing of the antagonistic attitudes of the parties waiting for him outside the premises." Id.; see also Paradigm Ins. Co. v. Texas Richmond Corp., 942 S.W.2d 645, 651
(Tex.App. ), writ of error denied (1997); J.A.J. Inc. v. Aetna Casualty Surety Co., 529 A.2d 806, 808 (Me. 1987). Applying this rule, CapitolIndemnity held that where intoxicated patrons assault a third party outside the bar, the third party's allegations of "failure to warn, failure to intercede, and failure to promptly request police assistance when it became likely that the assault and battery would occur" did not depend on the intoxicated state of the patrons and, therefore, the liquor liability exclusion did not bar coverage for the claims. CapitolIndemnity Corp. v. Blazer, supra, 51 F. Sup.2d 1089 -90.
In this case, the allegations of negligence are inseparable from the fact that Seneco either caused or contributed to the intoxication of Rodriguez. For example, if the alleged negligent design of the bar did not cause or contribute to the intoxication of Rodriguez, it is irrelevant that the only dance floor was located in the juice bar. The same is true of the plaintiffs' allegations of negligent supervision and operation. If these alleged negligent acts did not cause or contribute to the intoxication of Rodriguez, then the fact that Seneco failed to station employees between the juice bar area, the billiards room and other areas of the bar is simply not relevant. Since all of these allegations are dependent and inseparable from the fact that Seneco caused or contributed to the intoxication of Rodriguez, coverage is barred by the liquor liability exclusion. Moreover, creating an exception for the plaintiffs' failure to warn claims would render liquor liability exclusion clauses throughout the state meaningless. Any plaintiff who failed to circumvent a liquor liability exclusion through ordinary negligence claims would simply be able to rely on alleging a failure to warn. Such an exception would thus require bar owners to inform their patrons of the patently obvious — that if they drink and drive, they could die. This court is unwilling to impose such a broad and previously unrecognized duty upon bar owners. Therefore, because the "allegations of alcohol" are integral to and inseparable from the allegations negligence, the liquor liability exclusion applies as a matter of law.
 III CONCLUSION
CT Page 3464
Based on the foregoing, the defendant's motion for summary judgment is hereby granted.
Berger, J.