TRAVELERS INSURANCE COMPANY *v.*
ROBERT NAMEROW ET AL.

ROBERT NAMEROW ET AL. *v.* TRAVELERS
INSURANCE COMPANY
(SC 16375)

Sullivan, C. J., Borden, Norcott, Katz, Vertefeuille, Zarella and Flynn, Js.

Argued November 1, 2000—officially released October 22, 2002

*Austin J. McGuigan*, with whom were *Joseph B. Burns* and, on the brief, *Glenn E. Coe* and *Jennifer Weitz-Clancy*, for the appellants (Robert Namerow and Barbara Namerow).

*Frank H. Santoro*, with whom were *Frederick B. Tedford* and, on the brief, *Christopher J. Coxon*, for the appellee (Travelers Insurance Company).

*Opinion*

KATZ, J. The defendants, Robert Namerow and Barbara Namerow, appealed from the judgments of the trial court for the plaintiff, Travelers Insurance Company, rendered after a jury trial, in this consolidated action to determine the liability of the parties pursuant to a homeowners insurance policy.[1] The defendants con-

---

[1] Travelers Insurance Company (Travelers) first filed an action against the Namerows on grounds that are set forth in the text of this opinion. The Namerows thereafter filed an action against Travelers alleging various claims that are also set forth in the text of this opinion. Subsequently, the trial court consolidated these actions. For purposes of clarity, we refer to Travelers as the plaintiff and the Namerows as the defendants.

tended that the trial court improperly: (1) failed to instruct the jury on the elements of the civil arson defense; and (2) abused its discretion by admitting into evidence a document that the defendants claimed did not meet the requirements of the business records exception to the hearsay rule. In a decision released on September 4, 2001, this court concluded that the civil arson defense had not been implicated and declined to review the defendants' unpreserved evidentiary claim that the trial court had abused its discretion. *Travelers Ins. Co.* v. *Namerow*, 257 Conn. 812, 823, 832, 778 A.2d 168 (2001). Accordingly, we affirmed the judgments of the trial court.[2] Id., 832.

Thereafter, the defendants filed a motion for reconsideration or reconsideration en banc, addressed solely to the issue of whether the pleadings, in conjunction with the insurance policy at issue, had raised sufficiently the civil arson defense and whether motive was an element of the defense that the insurer was required to prove in order to prevail at trial. We granted the motion for reconsideration en banc and added to the panel Justices Borden and Zarella, who read the briefs and the record, and listened to the tape recording of the oral arguments. Following reconsideration, we now conclude that the civil arson defense did apply but that, because motive is not an element of that defense, the trial court's instructions were not improper.[3] Accordingly, we affirm the trial court's judgments.

---

[2] In the event that the defendants were awarded a new trial, the plaintiff presented an adverse ruling of the trial court for our consideration pursuant to Practice Book § 63-4 (a) (1) (B). Specifically, the plaintiff claimed that the trial court improperly instructed the jury that, if the defendants had elected not to repair or replace their house and accepted only cash value under the homeowners insurance policy, their maximum recovery would have been the policy limit of $485,500. Because we affirmed the trial court's judgments, we did not reach this issue.

[3] Because the defendants' motion for reconsideration en banc did not address the second issue raised on appeal by the defendants, namely, whether the trial court improperly admitted into evidence a document under the business records exception to the hearsay rule, we do not reconsider

The record discloses the following undisputed facts. On March 19, 1994, the plaintiff issued a homeowners insurance policy (policy) to the defendants. On February 3, 1995, a fire destroyed most of the defendants' house located at 217 Deercliff Road in Avon. At the time of the fire, the homeowners policy was in full effect. The policy provided coverage for loss and damage to the defendants' house and personal property caused by fire, and coverage for additional living expenses incurred by the defendants in the event that their house became uninhabitable. The policy, however, excluded from coverage any loss caused directly or indirectly by any act committed by or at the direction of the defendants with the intent to cause a loss.

Following the fire, the plaintiff brought the first of these two actions against the defendants to recover certain cash advances, totaling $50,000, that it had paid to the defendants pursuant to the policy, alleging that the defendants were not covered under the policy because the loss had been caused by an act committed by or at the direction of the defendants with the intent to cause such loss. Thereafter, the plaintiff amended its complaint to seek the amount paid to Prudential Home Mortgage Company[4] under the mortgage clause of the policy as additional damages.[5]

our resolution of that issue as initially decided in *Travelers Ins. Co.* v. *Namerow*, supra, 257 Conn. 832. Consequently, only our disposition of the jury instruction issue in that opinion is superseded by this opinion.

[4] The plaintiff had paid $374,577.83 to Prudential Home Mortgage Company, the defendants' first mortgagee on the property at the time of the fire, in accordance with the policy's mortgage clause. That clause required the plaintiff to pay the defendants' mortgage holder for any loss to the house, to the extent of the mortgage holder's interest in the property, regardless of whether the plaintiff had denied the defendants' claim under the policy.

[5] The amended complaint also sought to recover $8625 for a chain-link fence that, following the fire, the plaintiff had erected around the defendants' house. The plaintiff, however, offered no evidence pertaining to the chain-link fence at trial.

The defendants denied the plaintiff's allegations and filed a separate action against the plaintiff, setting forth their claims in a thirteen count complaint. The complaint contained, inter alia, claims arising under the policy for breach of contract, bad faith, breach of fiduciary duties, intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, invasion of privacy, intentional misrepresentation, negligent misrepresentation, as well as claims for damages for violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq. In response, the plaintiff filed an answer denying each of the defendants' claims. The plaintiff also filed thirteen special defenses asserting, inter alia, that the policy did not cover the defendants' loss because the defendants either expected or intended the loss.[6] The plaintiff also filed a three count counterclaim for, inter alia, bad faith and vexatious litigation. Thereafter, the cases were consolidated and tried to the jury.

After the fire, the defendants at all times maintained that the fire had begun accidentally in their Mercedes-Benz automobile that had been parked in their garage. Barbara Namerow, who was home alone when the fire started, testified that she heard "exploding noises" coming from the garage. She then looked into the garage and noticed dark smoke coming from the Mercedes-Benz. She first telephoned her husband, then called the police and exited the house. Police and fire personnel arrived at the house soon afterward, followed by Robert Namerow.

---

[6] The plaintiff's second special defense provided: "The . . . policy does not provide coverage for acts or events resulting in property damage either expected or intended by the [defendants]. The [defendants'] claim is not covered to the extent that said claim is based on damage expected or intended by the [defendants]."

After he had arrived on the scene of the fire, Robert Namerow reported the damage to their insurance agent, who in turn notified the plaintiff. The plaintiff sent Richard Sweeney, one of its claims representatives, to visit the defendants' house on the day of the fire. On the basis of the defendants' statements that the fire was accidental and the provisions of the policy, Sweeney issued the defendants an advance in the amount of $10,000. The defendants thereafter received two additional advances for $15,000 and $25,000 on February 13, 1995, and March 10, 1995, respectively.

Also on February 3, 1995, the day of the fire, Sergeant James Wolfe and Detective William Flanagan of the state fire marshal's office investigated the fire at the defendants' house. They determined that the fire had originated in the garage where the defendants' automobiles had been parked. Thereafter, they removed the defendants' destroyed Mercedes-Benz and Subaru automobiles from the garage and towed them to a facility for further investigation. On February 6, 1995, investigators for the plaintiff and state fire marshal personnel went to the facility and examined the Mercedes-Benz. Upon completion of their inspection, they concluded that an overheating problem in the Mercedes-Benz' catalytic converter was a possible cause of the fire.

On February 10, 1995, the plaintiff's investigators returned to the facility to examine the Mercedes-Benz a second time and to take samples. The samples that the plaintiff had removed from the interior of the automobile tested positive for the presence of gasoline. These results indicated, essentially, that the gasoline was fresh and, because of its unweathered condition, could not have come from the gas tank of the Mercedes-Benz. The plaintiff's investigators also examined the defendants' garage on February 17, 1995. During that visit, the investigators noticed the smell of gasoline emanating from the drains in the garage floor. On Febru-

ary 23, 1995, the plaintiff's investigators returned to the defendants' garage and obtained samples of the garage's concrete floor and the soil found underneath the garage floor drains. The test results of those samples also showed the presence of unweathered gasoline. The plaintiff's investigators concluded that the gasoline had been poured inside the garage prior to the fire. On the basis of those findings, the plaintiff concluded that the fire had been incendiary in nature and had been started either by the defendants or at their direction, with the intent to cause a loss.

At trial, the parties disputed the origin of the fire and whether the defendants' damages were covered under the policy. The plaintiff contended that the defendants had caused the fire either by igniting accelerants that had been spread throughout the garage or by directing someone else to ignite the accelerants. The defendants, however, maintained that the fire had started accidentally in the engine of the Mercedes-Benz while it was parked in the garage. In addition to the defendants' testimony and the testimony of the fire and police department personnel that had arrived at the scene of the fire and investigated the fire, both sides presented expert testimony regarding the timing of events surrounding the fire and its progression, the burn patterns of the fire, and whether the fire was incendiary in origin. The jury returned verdicts for the plaintiff in both actions and the trial court rendered judgments in accordance with those verdicts. This appeal followed.[7]

The defendants claim that the trial court improperly failed to instruct the jury, in accordance with their request to charge, and pursuant to Supreme and Appellate Court precedent, as to the civil arson defense,

---

[7] The defendants appealed from the trial court's judgments to the Appellate Court. We then transferred the consolidated appeal from the Appellate Court to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

which the defendants maintain was required as a matter of law. Specifically, the defendants claim that the trial court improperly refused to charge the jury that, in order for the plaintiff to prevail, it must prove by a preponderance of the evidence that the fire was incendiary in nature, that the defendants had the opportunity to cause the fire, and that the defendants had a motive for setting the fire. The defendants further contend that the evidence offered by the plaintiff with regard to the motive element of the arson defense was not sufficient to warrant the judgments in favor of the plaintiff and, therefore, those judgments must be reversed. The plaintiff claims, by contrast, that it had no obligation to establish the element of motive under the terms of the policy. The plaintiff contends that, in both its complaint and its second special defense to the defendants' complaint, it had invoked an exclusion from coverage for loss based on an intentional act by the defendants. Thus, by implication, the plaintiff's claim raised the contention, which was accepted by the trial court and adopted by the majority in the initial opinion in this appeal; *Travelers Ins. Co.* v. *Namerow*, supra, 257 Conn. 827–28; that the pleadings did not raise the civil arson defense. Upon reconsideration, we agree with the defendants that the defense of civil arson was raised by the pleadings. We further conclude, however, that the trial court's instructions were not improper because motive is not a necessary element of that defense.

The following additional procedural history is relevant to our resolution of this claim. In the trial court, the defendants moved for a directed verdict at the close of the plaintiff's case, claiming that the plaintiff had failed to establish the elements of the civil arson defense. Specifically, the defendants claimed that the plaintiff had not presented any evidence that the defendants had a motive to set fire to their house, as is required in a civil arson case. The plaintiff countered

that the civil arson defense was not relevant in this case because the plaintiff had brought the initial action and had denied the defendants' claim under the terms of the policy. The plaintiff claimed that, pursuant to the policy, it had to prove only that the defendants' loss arose out of an act committed by or at the direction of the defendants with the intent to cause the loss. Thus, under the plaintiff's theory of the pleadings, the defense of civil arson was not raised. Additionally, the plaintiff maintained that, even if the civil arson defense had been raised, motive was not a required element to establish civil arson. Finally, the plaintiff claimed that, even if motive were a required element, it had offered sufficient evidence to prove the defendants' motive and, therefore, to warrant a denial of the defendants' motion for a directed verdict.

The trial court denied the defendants' motion for a directed verdict, concluding that there was sufficient evidence from which the jury could infer that the defendants had a motive to set the fire that damaged their house, and that evidence of motive was not required because the plaintiff had not invoked the civil arson defense but, rather, had denied the defendants' claim pursuant to the intentional loss exclusion contained in the policy.[8]

---

[8] In ruling on the defendants' motion for a directed verdict, the trial court stated: "I find . . . [t]hat technically the [plaintiff did not accuse] the defendants of committing arson. In the [court's] review of the complaint, [the] plaintiff claims that the exclusion to the policy applies because it was an intentional loss. Intentional loss is defined in the policy [as loss] . . . by or at the direction of the insured. . . . It doesn't say motive, it says intent. The fact that it was not accidental means it was done with intent. That [however] doesn't necessarily mean that there was a motive. . . .

"The [plaintiff] simply has to prove that the fire was caused by the defendants or their agents and [that] it was intentional. . . . [*Corosa Realty* v. *Covenant Ins. Co.*, 16 Conn. App. 684, 548 A.2d 473 (1988), and *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, 5 Conn. App. 579, 501 A.2d 1214 (1985), cert. denied, 198 Conn. 803, 503 A.2d 172 (1986)], are not applicable [in this case] for two reasons. One, [those cases discuss] arson and [two, those cases discuss] arson where motive has been proven . . . . . I don't think the word arson has ever been mentioned by any of the plaintiff's

At the close of evidence, the defendants filed a request to charge on the issue of the civil arson defense, asking the trial court to instruct the jury on motive, in addition to incendiarism and opportunity. In the request, the defendants provided the trial court with specific language from the special defenses that had been submitted by the insurance companies in *Verrastro* v. *Middlesex Ins. Co.*, 207 Conn. 179, 540 A.2d 693 (1988), *Corosa Realty* v. *Covenant Ins. Co.*, 16 Conn. App. 684, 548 A.2d 473 (1988), and *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, 5 Conn. App. 579, 501 A.2d 1214 (1985), cert. denied, 198 Conn. 803, 503 A.2d 172 (1986), which language this court and the Appellate Court had interpreted as assertions of the arson defense. The defendants argued that the language contained in the special defenses submitted by the insurance companies in those cases was similar to the language contained in the second special defense offered by the plaintiff in this case. See footnote 6 of this opinion. The defendants claimed that the trial court, therefore, should interpret the plaintiff's second special defense as an assertion of the civil arson defense and instruct the jury accordingly.

The trial court denied the defendants' request to charge and subsequently instructed the jury, with regard to the issue of the plaintiff's burden of proof, as follows: "On [the issue of the plaintiff's denial of the defendants' claims under the policy] the burden of proof is on the [plaintiff] to prove that the exclusion applies. In other words, the burden of proof is on the [plaintiff] to prove that the [defendants] originated or set the fire or it was set at their direction and it was done

witnesses [in this case]. . . . So I find . . . that the policy definition for [exclusionary acts] differs from the definition of arson. Arson may carry motive [as an element] based upon those cases, but all [that is required] under the policy exclusion is [intent] and I find a difference between the meaning of intent . . . and motive, so for that reason, based upon the law, I am denying the [defendants'] motion for a directed verdict at this time."

intentionally. . . . [T]he issue of motive has come up.[9] The [plaintiff] does not have to prove a motive on the part of the [defendants] to prove that this fire was caused by them and it was done intentionally. Under the terms of the policy, the [plaintiff] merely has to prove that the fire was caused by the [defendants] or at their direction, and it was done with the intent to cause the loss. [The plaintiff does] not have to prove what the reason or motive was. . . . [E]vidence [of motive] came in before you even though the [plaintiff] did not have to prove motive. However, you may consider motive or reason . . . when you are assessing the credibility of all the circumstances, the credibility of the witnesses, and the parties . . . ." At the close of its instructions, the trial court provided the jury with a special verdict form on which to answer special interrogatories relating to the allegations of the complaints. After the court's instructions, the defendants took exception to the failure of the court to instruct on the issue of motive, arguing again that the plaintiff had asserted the civil arson defense.

The jury returned its verdicts on the special verdict form. In both actions, the jury found for the plaintiff on its claim that the damage to the defendants' house arose out of an act committed by or at the direction of the defendants with the intent to cause a loss. Thereafter, the defendants moved to set aside the verdict and for judgment notwithstanding the verdict, claiming that the trial court improperly had refused to instruct the jury on the civil arson defense and its element of motive.

---

[9] Before the trial court instructed the jury, plaintiff's counsel in his closing argument highlighted what he believed was evidence of the defendants' poor financial condition. Thereafter, he stated to the jury: "That's something I want you to consider. But motive is not something that I have to prove. I don't have to prove to you why they did it. I [only] have to prove it's an incendiary fire, and I have to prove that they had opportunity and they had the only opportunity."

The trial court denied both motions and rendered judgments for the plaintiff in accordance with the verdicts.

On appeal, the defendants claim that the trial court improperly denied their request to charge the jury with respect to the civil arson defense and its element of motive. They make three arguments in support of their claim. First, they contend that the language of the plaintiff's policy and its second special defense raised the civil arson defense. See footnote 6 of this opinion. Second, they maintain that the arson defense applies because the policy's language comports with the traditional definition of arson. Finally, the defendants assert that the plaintiff tried its case on the theory of arson and repeatedly referred to the case as an arson case.

I

We begin with our jurisprudence regarding the law of pleadings, followed by our jurisprudence regarding insurance policies. "[T]he interpretation of pleadings is always a question of law for the court . . . . *Cahill* v. *Board of Education*, 198 Conn. 229, 236, 502 A.2d 410 (1985). The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . *Beaudoin* v. *Town Oil Co.*, 207 Conn. 575, 587–88, 542 A.2d 1124 (1988), and cases cited therein. Although essential allegations may not be supplied by conjecture or remote implication; *Cahill* v. *Board of Education*, supra, 236; the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. *Price* v. *Bouteiller*, 79 Conn. 255, 257, 64 A. 227 (1906). As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery. *Tedesco* v.

*Stamford*, 215 Conn. 450, 459, 576 A.2d 1273 (1990), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd, 222 Conn. 233, 610 A.2d 574 (1992); *Giulietti* v. *Connecticut Ins. Placement Facility*, 205 Conn. 424, 434, 534 A.2d 213 (1987) . . . . [I]f the parties at trial have adopted a certain construction of the pleadings; see, e.g., *Milardo* v. *Branciforte*, 109 Conn. 693, 695, 145 A. 573 (1929); we should give deference to that construction." (Citations omitted; internal quotation marks omitted.) *Dornfried* v. *October Twenty-Four, Inc.*, 230 Conn. 622, 629–30, 646 A.2d 772 (1994). Finally, the practice of reading pleadings broadly applies to special defenses as well. *Doe* v. *Yale University*, 252 Conn. 641, 683, 748 A.2d 834 (2000).

"Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [plaintiff] expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally reasonable] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted." (Citations omitted; internal quotation marks omitted.) *Hertz Corp.* v. *Federal Ins. Co.*, 245 Conn. 374, 381–82, 713 A.2d 820 (1998). "[T]his rule of construction favorable to the insured extends to exclusion clauses." (Internal quotation marks omitted.) *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 770, 653 A.2d 122 (1995).

Application of these principles to the facts of the present case compels us to conclude that the civil arson

defense was raised. Recognizing that this case is a consolidated action, and that both actions involve the *same parties* and essentially the *same issue*, namely, whether the defendants are entitled to recover under the policy for the loss of their house, we consider the plaintiff's complaint in the first action in determining whether the plaintiff raised the civil arson defense in the second action as a means for denying recovery under the policy. *Beaudoin* v. *Town Oil Co.*, supra, 207 Conn. 587–88 (pleadings should be read broadly and realistically, rather than narrowly and technically); *Price* v. *Bouteiller*, supra, 79 Conn. 257 (complaint must be read in its entirety to give effect to pleading with reference to general theory upon which it proceeded and do substantial justice between parties).

In examining that complaint, it is apparent that the language employed by the plaintiff cannot be distinguished from that used by the insurance companies in *Verrastro* v. *Middlesex Ins. Co.*, supra, 207 Conn. 179, *Corosa Realty* v. *Covenant Ins. Co.*, supra, 16 Conn. App. 684, and *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 5 Conn. App. 579, cases in which this court and the Appellate Court concluded that the civil arson defense had been raised.[10] In the present

---

[10] It is important to note that in *Verrastro, Corosa Realty* and *Souper Spud, Inc.*, the insurance companies therein had refused to pay the insured under the policies and, therefore, were sued by the policyholders on that basis. Accordingly, civil arson was referred to in those cases as a *defense* to recovery under the policies. As we have noted previously, however, the present case is a consolidated action in which the plaintiff insurer first brought a claim against the defendant insureds to recover moneys already paid under the policy. Therefore, in order to prevail, the civil arson defense need not be raised as a defense. The elements required to prove civil arson are the same no matter whether they are pleaded by an insurer in a complaint, or asserted by an insurer as a defense. See *Aetna Casualty & Surety Co.* v. *Pizza Connection, Inc.*, 55 Conn. App. 488, 492, 740 A.2d 408 (1999) (reciting factors of proof of incendiary fire, opportunity and motive for declaratory judgment action by insurer). Indeed, under either scenario, the insurer is trying to avoid liability under the policy based on alleged arson on the part of the insured.

case, the plaintiff's complaint provides: "The [p]olicy excluded from coverage any loss arising out of any act committed by or at the direction of the insured with the intent to cause a loss. . . . Subsequent to making . . . payments to the defendants, the plaintiff's investigation revealed that the *fire was incendiary in origin* and that the losses claimed by the defendants, and for which the plaintiff paid a total of Fifty Thousand ($50,000.00) Dollars in advance payments on the defendants' claim, [were] caused by acts either committed by the defendants or at their direction, with the *intent to cause a loss*." (Emphasis added.) By comparison, in *Verrastro*, wherein the homeowners were seeking the proceeds of a fire insurance policy on a building that had been damaged by fire, the insurance company's analogous special defense, as revised, alleged: "[T]he plaintiffs independently or through their partnership relationship or through agency or through other means committed acts either directly or indirectly which caused the destruction of the property in question by fire. Those acts were included but not limited to either themselves or to a third party entering the premises and with the use of gas or fire, attempted to destroy the property located therein." *Verrastro* v. *Middlesex Ins. Co.*, Conn. Supreme Court Records & Briefs, December Term, 1987, Pt. 6, Record p. 12. Although there was no mention of "arson" in the special defense in that case, this court, nevertheless, noted that "the defendant [insurer] sought to bar the plaintiffs' claim because of arson." *Verrastro* v. *Middlesex Ins. Co.*, supra, 207 Conn. 181. Indeed, throughout the opinion in that case, this court repeatedly referred to the insurance company's special defense as its "arson special defense." See id., 182, 183, 184.

Similarly, the record in *Corosa Realty* reveals that the defendant insurer alleged in its special defense that the plaintiff insured had "set or caused to be set the

fire at the insured property . . . *in violation of the terms and conditions of the policy.*"[11] (Emphasis added.) *Corosa Realty* v. *Covenant Ins. Co.*, Conn. Appellate Court Records & Briefs, September Term, 1988, Record p. 13. The pleadings in that case did not couch the insurer's claim as one sounding precisely in the "civil arson defense." Rather, the defendant insurer alleged that the plaintiff insured had violated the terms and conditions of the insurance policy. Despite the insurer's choice of language therein, the Appellate Court recognized the insurer's claim as an "arson defense." *Corosa Realty* v. *Covenant Ins. Co.*, supra, 16 Conn. App. 686–87.

Finally, in *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 5 Conn. App. 585, the Appellate Court specifically noted that the defendant insurer's special defenses *"mirrored certain exclusionary provisions contained in the insurance policy."* (Emphasis added.) The Appellate Court, nevertheless, recognized that the insurer had raised the civil arson defense.[12] Id. Accordingly, consistent with the treatment of the language used in those three cases, we conclude that the plaintiff in the present case raised "civil arson" in its complaint as a means for avoiding liability under the policy.

---

[11] We note that the language in the special defense in *Corosa Realty* is nearly identical to the language in the plaintiff's complaint in the present case, in which the plaintiff alleged "that the *fire was incendiary in origin* and that the losses claimed by the defendants . . . [were] caused by acts either committed by the defendants or at their direction, with the *intent to cause a loss.*" (Emphasis added.)

[12] "In many policies, arson is expressly stated to be an excluded cause of loss, and under others, it is deemed to fall within a clause excluding coverage for loss deliberately caused by the insured. Some policies do not specifically exclude loss caused by arson of the insured." 10 G. Couch, Insurance (L. Russ & T. Segalla eds., 3d Ed. 1998) § 149:45, p. 149-53. Accordingly, the differences in the precise language of the allegations in *Verrastro, Corosa Realty, Souper Spud, Inc.*, and the present case are likely due to the differences in the actual language of the policy exclusions involved in each case.

We next turn to the plaintiff's second special defense to the defendants' complaint, which we conclude also entails civil arson. Specifically, the second special defense alleges an exclusion from coverage contained within the terms of the policy, namely, that the policy excludes from coverage the defendants' intentional acts that result in property damage. The exclusion in the policy is not act or crime specific, but is meant to exclude *all* intentional conduct performed by, or at the direction of, the insured. Put another way, the general language of the policy applies to all sorts of intentionally caused losses that are presented. When the facts of a particular case present a fire loss, as in the present case, the general language of the exclusion must necessarily connote civil arson. Because the special defense of civil arson represents a vehicle, constructed on sound public policy, for avoiding a contractual obligation premised on sufficient proof that an exclusion in the policy is applicable to the claim, the defense and the policy exclusion are not conceptually distinct. Were we to interpret the exclusion in the policy so as not to include the civil arson defense, we would, in effect, be reading the defense out of the policy. Moreover, the plaintiff's narrow construction of the general language of the exclusion in favor of itself, the insurer, directly contravenes the aforementioned tenet that an insurance policy must be construed in favor of the insured.

In summary, we recognize that the plaintiff did not use the term "arson" in its second special defense. The plaintiff did, however, note in its complaint that its "investigation revealed that the fire was incendiary in origin" and that the loss at issue was the result of the defendants' intentional act. Arson is defined under General Statutes §§ 53a-111 (a) and 53a-112 (a) as starting a fire "with intent to destroy or damage a building." "Incendiary" is defined as "one who deliberately and unlawfully sets fire to property." Black's Law Dictionary

(7th Ed. 1999); see also Merriam-Webster's New Collegiate Dictionary (10th Ed. 1995) (defining arson as "the willful or malicious burning of property [as a building]"). We therefore conclude that the plaintiff explicitly raised civil arson in its complaint. We further conclude that when an "intentional loss," as used in the policy, is committed by the burning of a building, the "intentional loss" exclusion is the very definition of arson, i.e., the intentional burning of a building. Accordingly, the plaintiff's second special defense raised the civil arson defense.

## II

Having concluded that the civil arson defense was raised in this case, we next determine whether motive is a required element of that defense. We conclude that motive is not an essential element of the defense and that, accordingly, the trial court was not required to instruct the jury on motive.

The case from which the defendants draw support for the principle that motive is a required element of proof when insurance coverage is denied because of civil arson is *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 5 Conn. App. 585. See also *Aetna Casualty & Surety Co.* v. *Pizza Connection, Inc.*, 55 Conn. App. 488, 492, 740 A.2d 408 (1999); *Corosa Realty* v. *Covenant Ins. Co.*, supra, 16 Conn. App. 684. The Appellate Court explained in *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 585, that "in order to establish a prima facie case of arson for purposes of denying coverage under an insurance policy, the insurer must establish that the fire was incendiary, that the insured, its agents or officers had an opportunity to cause the fire, and that such individuals had a motive for setting the fire." These elements are in accord with the leading treatises on insurance. See 21B J. Appleman & J. Appleman, Insurance Law and Practice

(1980) § 12682, p. 91 ("to establish a prima facie case of incendiarism for the purpose of denying coverage under a fire policy it is sufficient to show: arson by someone; motive by the suspect; and unexplained surrounding circumstantial evidence implicating the suspect"); 10 G. Couch, Insurance (L. Russ & T. Segalla eds., 3d Ed. 1998) § 149:46, p. 148-55 ("[t]he affirmative defense of incendiarism or arson committed by the insured is composed of three elements: [1] incendiary nature of the fire, [2] motive on the part of the insured to set the fire, and [3] opportunity for the insured, or someone acting on his or her behalf, to have set the fire").

A closer review of the Couch treatise, however, reveals an inconsistency. Although § 149:46 clearly articulates the three elements of the arson defense as including motive, in a different section specifically addressing motive, the treatise retreats from that stance: "In an action by an insured seeking compensation under a fire policy, where the insurer defends on the basis that [the] insured caused the fire, *motive need not be proven as a separate element*, although it may form part of the circumstances from which it is inferred that the insured caused the fire." (Emphasis added.) 10 G. Couch, supra, § 149:59, pp. 149-85 through 149-86. As authority for this proposition, the treatise cites one case: *Giambra* v. *Aetna Casualty & Surety Co.*, 315 Pa. Super. 231, 232, 461 A.2d 1256 (1983) (rejecting notion that motive must be proved as separate element in civil case). 10 G. Couch, supra, § 149:59, p. 149-85. Our review indicates that a minority of states follow this rule and do not require motive as a separate element of the civil arson defense. See, e.g., *O-So Detroit, Inc.* v. *Home Ins. Co.*, 973 F.2d 498, 501–502 (6th Cir. 1992) (applying Michigan law).

Although many jurisdictions do, however, require motive as a separate element; see 10 G. Couch, supra,

§ 149:46, p. 149-55 (reciting general rule including motive as element and relying upon authority from state and federal cases in fifteen jurisdictions); we do not agree that Connecticut should require motive as an element of the civil arson defense. Rather, its role is best served by bolstering cases in which direct evidence of arson is lacking. See *O-So Detroit, Inc.* v. *Home Ins. Co.*, supra, 973 F.2d 501 ("circumstantial proof of motive plus access or opportunity is adequate to establish arson," but these elements are not mandatory; can prove arson by showing insured "set fire to the building or caused it to be set on fire" [internal quotation marks omitted]); *Jamaica Time Petroleum, Inc.* v. *Federal Ins. Co.*, 366 F.2d 156, 157 (10th Cir. 1966), cert. denied, 385 U.S. 1024, 87 S. Ct. 753, 17 L. Ed. 2d 674 (1967) ("insurer has the burden of establishing the defense of arson by either direct or circumstantial evidence"; "evidence of deliberate destruction is sufficient"); *Sutton* v. *Northern Ins. Co. of New York*, 681 F. Sup. 1221, 1224 n.4 (S.D. Miss. 1988) ("motive . . . is not always an indispensable element in arson defense," as, for example, when direct evidence of arson exists or when only insured could have had access to insured premises); *Moore* v. *Farmers Ins. Exchange*, 111 Ill. App. 3d 401, 408, 444 N.E.2d 220 (1982) (motive and opportunity can be proven by circumstantial evidence but sufficient to show fire was of incendiary nature and that plaintiff caused or procured fire); *Johnson* v. *Auto-Owners Ins. Group*, 202 Mich. App. 525, 527, 509 N.W.2d 538 (1993), cert. denied, 445 Mich. 936, 521 N.W.2d 606 (1994) ("Where an arson defense is raised by an insurer, the dispositive determination is whether the plaintiff set the fire or caused it to be set. . . . Motive and opportunity are merely two factors to be considered in such a determination." [Citations omitted.]); *Freeman* v. *St. Paul Fire & Marine Ins. Co.*, 72 N.C. App. 292, 297–99, 324 S.E.2d 307, cert. denied,

313 N.C. 599, 330 S.E.2d 609 (1985) (ordinarily there is no direct evidence of cause of fire; motive and opportunity are merely circumstances to be considered, but are not essential elements of arson defense); *Giambra* v. *Aetna Casualty & Surety Co.*, supra, 315 Pa. Super. 234 (motive need not be proven as separate element in civil arson cases, but may form part of circumstances from which it is inferred that subject party caused fire).

As a final point, it is noteworthy that motive plays no role in arson cases in the criminal arena. See General Statutes § 53a-215.[13] Accordingly, it hardly seems an important enough consideration to warrant status as a required element in civil arson cases. Therefore, we conclude that motive is not an essential element in civil arson cases, and that, accordingly, the trial court's instructions in the present case were proper.

The judgments are affirmed.

---

[13] General Statutes § 53a-215 provides: "(a) A person is guilty of insurance fraud when the person, with the intent to injure, defraud or deceive any insurance company: (1) Presents or causes to be presented to any insurance company, any written or oral statement including computer-generated documents as part of, or in support of, any application for any policy of insurance or a claim for payment or other benefit pursuant to such policy of insurance, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such application or claim; or (2) assists, abets, solicits, or conspires with another to prepare or make any written or oral statement that is intended to be presented to any insurance company in connection with, or in support of, any application for any policy of insurance or any claim for payment or other benefit pursuant to such policy of insurance, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such application or claim for the purposes of defrauding such insurance company.

"(b) For the purposes of this section, 'statement' includes, but is not limited to, any notice, statement, invoice, account, estimate of property damages, bill for services, test result, or other evidence of loss, injury, or expense.

"(c) For the purposes of this section, 'insurance company' means 'insurance company' as defined in section 38a-1.

"(d) Insurance fraud is a class D felony."

In this opinion SULLIVAN, C. J., and BORDEN, NOR-
COTT and ZARELLA, Js., concurred.

VERTEFEUILLE, J., with whom FLYNN, J., joins,
concurring. I agree with the result reached by the major-
ity. I further agree with the majority that motive is not
a required element of the civil arson defense. I write
separately, however, because I would affirm the judg-
ments of the trial court based on the terms of the insur-
ance policy in question, without further refinement of
the common-law civil arson defense. I would do so for
the reasons detailed in my majority opinion in *Travelers
Ins. Co. v. Namerow*, 257 Conn. 812, 778 A.2d 168 (2001).

Additionally, I write to emphasize the importance of
giving deference to the trial court in its interpretation
of the pleadings in a case such as the present one. After
the lengthy presentation of the plaintiff's case, the trial
court determined that the civil arson defense was not
necessarily implicated by the plaintiff's complaint or
by the evidence presented by the plaintiff. Id., 820 n.6.
Further, the trial court apparently did not find the civil
arson defense in the plaintiff's special defense in the
second action, which had been initiated by the defen-
dants. The majority would conclude that the civil arson
defense can be found in these pleadings by implication
alone. I respectfully disagree with the majority that such
an analysis was overly narrow and technical. See, e.g.,
*Traveler's Ins. Co. v. Namerow*, 261 Conn. 784, 795,
797, 807 A.2d 467 (2002).

To hold, as the majority does today, that the civil
arson defense can be found in pleadings where it argua-
bly is absent both overemphasizes the importance of
this common-law doctrine and needlessly complicates
the resolution of cases of alleged intentional loss. The
contractual dispute between the defendant insureds
and the plaintiff, their insurer, should be resolved, if

possible, on the basis of the terms of the contract, which is the homeowners policy issued by the plaintiff.

I concur with the majority that the judgments of the trial court should be affirmed.