PETER BREEN *v.* SYNTHES-STRATEC, INC.
(AC 28215)

Flynn, C. J., and Gruendel and Lavine, Js.

106

Argued January 10—officially released May 27, 2008

*Vincent F. Sabatini*, with whom, on the brief, was *James V. Sabatini*, for the appellant (plaintiff).

*W. Kennedy Simpson*, pro hac vice, with whom was *Daniel J. Foster*, for the appellee (substitute defendant).

*Opinion*

FLYNN, C. J. In this product liability action, the plaintiff, Peter Breen, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the substitute defendant, Synthes (U.S.A.)[1] On appeal, the plaintiff

[1] The plaintiff's initial complaint named the defendant as "Synthes-Stratec, Inc., a/k/a Synthes USA, Synthes USA Ltd., Synthes North America, Inc., and Sythes-Stratec, Inc. U.S." The plaintiff later filed a motion to substitute the defendant, requesting that "the court substitute the defendants named in this action to the defendant Synthes (U.S.A.)." The motion also indicated that the parties had agreed to the substitution of Synthes (U.S.A.) as the party defendant. At a hearing on January 17, 2006, the defendant stated that it did not have an objection to this substitution, and the court orally granted the motion. We refer in this opinion to Synthes (U.S.A.) as the defendant.

claims that the court improperly (1) instructed the jury on doctrines that were inapplicable to the case, (2) failed to redact portions of the plaintiff's medical records and permitted a witness to testify about those portions of the records, and (3) refused to allow him to use the deposition testimony of a witness during the plaintiff's cross-examination of another defense witness. We affirm the judgment of the trial court.[2]

The jury reasonably could have found the following facts. On April 14, 2002, the plaintiff broke his left femur and, consequently, entered Hartford Hospital to undergo treatment for that injury. On April 15, 2002, Christopher J. Lena, an orthopedic surgeon, performed an open reduction and internal fixation on the plaintiff. During that procedure, Lena reduced the fracture and secured the area with a 281.98 95° dynamic condylar screw plate (first plate) that was manufactured by the defendant. The plaintiff received postoperative treatment from Lena. Approximately six months after the surgery, the first plate broke. The plaintiff underwent another procedure in which Lena removed the first plate. In order to correct a deformity in the plaintiff, Lena needed to implant a 110° plate instead of a similar 95° plate that was used previously, and, therefore, Lena requested that a representative of the defendant provide him with one. The defendant's representative modified another 281.98 95° dynamic condylar screw plate, which also was manufactured by the defendant, by bending it to 110° (second plate), and Lena surgically implanted the second plate. Approximately six months after the second surgery, the second plate broke. The plaintiff subsequently underwent a third procedure to remove

---

[2] In the event that the plaintiff was awarded a new trial, the defendant presented an adverse ruling of the trial court for our consideration pursuant to Practice Book § 63-4 (a) (1) (B). The defendant claimed that the court improperly prohibited Christopher J. Lena, an orthopedic surgeon, from testifying about expert opinions. Because we affirm the judgment of the trial court, we need not reach this issue. See *Travelers Ins. Co.* v. *Namerow*, 261 Conn. 784, 786 n.2, 807 A.2d 467 (2002).

the second plate, and a different surgeon performed a bone graft and implanted another plate.

Thereafter, the plaintiff brought the underlying product liability action against the defendant pursuant to the Connecticut Product Liability Act (act), General Statutes § 52-572m et seq., alleging that he suffered injuries as a result of the defective first and second plates. In response, the defendant filed an answer and special defenses, two of which alleged that the plaintiff's claims were barred by comment (k) to § 402A of the Restatement (Second) of Torts and by the learned intermediary doctrine. See 2 Restatement (Second), Torts § 402A, comment (k) (1965). The case was tried to the jury and resulted in a defendant's verdict. The plaintiff subsequently filed a motion to set aside the verdict. The court denied the plaintiff's motion and rendered judgment in favor of the defendant in accordance with the jury verdict. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We first address the plaintiff's claim that the court improperly charged the jury on comment (k) to § 402A of the Restatement (Second) of Torts and on the learned intermediary doctrine—instructions requested by the defendant.[3] The crux of the plaintiff's claim is that the court should not have instructed the jury with respect to comment (k) and the learned intermediary doctrine because these doctrines are inapplicable to the type of medical device involved in the present case.[4] We disagree.

---

[3] We note that the plaintiff has preserved this claim for our review by filing a request to charge, by filing an objection to the defendant's proposed instructions and by taking exceptions to the charge as given, arguing that the instructions on comment (k) and the learned intermediary doctrine should not have been given because they were inapplicable.

[4] Although the plaintiff contends, in his appellate brief, that the court should not have instructed the jury on comment (k) and on the learned

The plaintiff's claim presents a question of law, and, therefore, our review is plenary. See generally *Vitanza* v. *Upjohn Co.*, 257 Conn. 365, 368, 778 A.2d 829 (2001) (applicability of learned intermediary doctrine is question of law).

We commence our review by setting forth certain legal principles relating to product liability law. "Manufacturers in Connecticut are strictly liable for defective products under § 402A of the Restatement (Second) of Torts. See *Giglio* v. *Connecticut Light & Power Co.*, 180 Conn. 230, 233, 429 A.2d 486 (1980) . . . . A product may be defective due to a flaw in the manufacturing process, a design defect or because of inadequate warnings or instructions. . . .

"According to the Restatement (Second) of Torts, certain products, by their very nature, cannot be made safe. See 2 Restatement (Second), supra, § 402A, comment (k). Prescription drugs generally fall within the classification of unavoidably unsafe products." (Citations omitted; internal quotation marks omitted.) *Vitanza* v. *Upjohn Co.*, supra, 257 Conn. 373–75.

"Comment (k) to § 402A of the Restatement (Second) of Torts provides that some products are incapable of

intermediary doctrine, he does not argue that the instructions constituted an inaccurate statement of the law. Specifically, the plaintiff does not claim that the wording or content of the instructions on comment (k) and on the learned intermediary doctrine were in any way improper or inadequate. We therefore do not decide whether the court's instructions on these issues were accurate. See *Kramer* v. *Petisi*, 285 Conn. 674, 680 n.4, 940 A.2d 800 (2008); *Puchalsky* v. *Rappahahn*, 63 Conn. App. 72, 81 n.9, 774 A.2d 1029, cert. denied, 256 Conn. 931, 776 A.2d 1147 (2001).

At oral argument before this court, however, the plaintiff did argue that the court's charge was improper in that it failed to delineate specifically the special defenses, namely, the learned intermediary doctrine and comment (k) to § 402A of the Restatement (Second) of Torts. We decline to consider this argument because "[i]t is well settled that claims on appeal must be adequately briefed . . . and cannot be raised for the first time at oral argument before the reviewing court." *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

being made safe for their intended and ordinary use. Nevertheless, certain unavoidably unsafe products provide such benefits to society that their use is fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. . . . 2 Restatement (Second), supra, § 402A, comment (k). Comment (k) provides that a manufacturer of an unavoidably unsafe product should not . . . be held to strict liability for unfortunate consequences attending their use, merely because [it] has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk." (Emphasis in original; internal quotation marks omitted.) *Vitanza* v. *Upjohn Co.*, supra, 257 Conn. 376–77.

"A manufacturer of an unavoidably unsafe product can avoid strict liability if the product is properly prepared, and accompanied by proper directions and warning . . . . 2 Restatement (Second), supra, § 402A, comment (k). Generally, a manufacturer's duty to warn of dangers associated with its products pertains only to known dangers and runs to the ultimate user or consumer of those products. See *Tomer* v. *American Home Products Corp.*, [170 Conn. 681, 689–90, 368 A.2d 35 (1976)]; 2 Restatement (Second), supra, § 388 (c). The learned intermediary doctrine, which is supported by comment (k) to § 402A of the Restatement (Second) of Torts, is an exception to this general rule." (Internal quotation marks omitted.) *Vitanza* v. *Upjohn Co.*, supra, 257 Conn. 375.

"The learned intermediary doctrine provides that adequate warnings to prescribing physicians obviate the need for manufacturers of prescription products to warn ultimate consumers directly. The doctrine is based on the principle that prescribing physicians act as

learned intermediaries between a manufacturer and consumer and, therefore, stand in the best position to evaluate a patient's needs and assess [the] risks and benefits of a particular course of treatment." (Internal quotation marks omitted.) Id., 376.

In his appellate brief to this court, the plaintiff makes numerous arguments to support his claim that comment (k) to § 402A of the Restatement (Second) of Torts is inapplicable under the circumstances of this case. As a threshold matter, we note that the plaintiff does acknowledge that in *Vitanza,* our Supreme Court adopted comment (k) to § 402A of the Restatement (Second) of Torts. The plaintiff contends, however, that the applicability of comment (k) is limited to situations in which the allegedly defective product is a prescription drug, citing *Vitanza.* Although *Vitanza* involved the prescription drug Ansaid, our Supreme Court in *Vitanza* did not limit expressly the applicability of comment (k) to cases involving prescription drugs. We conclude that, contrary to the plaintiff's assertion, *Vitanza* does not stand for the proposition that, under Connecticut law, comment (k) applies only to prescription drugs.

The plaintiff further argues that the plates manufactured by the defendant are not drugs, vaccines or experimental drugs and, therefore, do not fall within the ambit of comment (k) to § 402A of the Restatement (Second) of Torts. To support this argument, the plaintiff refers to the language of comment (k), which lists "drugs," "vaccines" and "experimental drugs" as examples of unavoidably unsafe products. However, our reading of comment (k) reveals that these examples are illustrative but do not comprise an exhaustive list of the types of products that may be characterized as unavoidably unsafe products. Rather, comment (k) provides that "[t]here are some products, which in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are

especially common in the field of drugs. An outstanding example is the vaccine for the . . . treatment of rabies . . . . Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous. The same is true of many other drugs, vaccines, *and the like,* many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs . . . ." (Emphasis added.) 2 Restatement (Second), supra, § 402A, comment (k).

Furthermore, in *Hurley* v. *Heart Physicians, P.C.,* 278 Conn. 305, 317, 898 A.2d 777 (2006), our Supreme Court applied the learned intermediary doctrine, which is supported by comment (k), in the context of prescription implantable medical devices. Our Supreme Court's decision in *Hurley* therefore instructs us that, under Connecticut law, comment (k) is not limited to prescription drugs but also is applicable to medical devices such as the plates implanted in the plaintiff's body. In light of existing case law and the language of comment (k) itself, we conclude that the application of comment (k) is not limited to prescription drugs only.[5]

With respect to the learned intermediary doctrine, the plaintiff contends that there is no binding Connecticut

[5] Many jurisdictions have extended the reach of comment (k) to § 402A of the Restatement (Second) of Torts to include prescription medical devices. See, e.g., *Adams* v. *Synthes Spine Co.,* 298 F.3d 1114, 1117 (9th Cir. 2002) (spinal device); *Phelps* v. *Sherwood Medical Industries,* 836 F.2d 296 (7th Cir. 1987) (heart catheter); *Brooks* v. *Medtronic, Inc.,* 750 F.2d 1227, 1230–31 (4th Cir. 1984) (cardiac pacemaker); *Harwell* v. *American Medical Systems, Inc.,* 803 F. Sup. 1287, 1300 (M.D. Tenn. 1992) (penile prosthesis); *Hufft* v. *Horowitz,* 4 Cal. App. 4th 8, 19, 5 Cal. Rptr. 2d 377 (1992) (penile prosthesis); *Mele* v. *Howmedica, Inc.,* 348 Ill. App. 3d 1, 19–21, 808 N.E.2d 1026 (artificial hip), appeal denied, 211 Ill. 2d 582, 823 N.E.2d 967 (2004); *Perfetti* v. *McGhan Medical,* 99 N.M. 645, 649, 662 P.2d 646 (N.M. App.) (mammary prosthesis), cert. denied, 99 N.M. 644, 662 P.2d 645 (1983); *Tansy* v. *Dacomed Corp.,* 890 P.2d 881, 886 (Okla. 1994) (penile prosthesis); *Creazzo* v. *Medtronic, Inc.,* 903 A.2d 24, 31 (Pa. Super. 2006) (implantable neurological electrical pulse generator).

precedent that mandates the application of the doctrine to prescription medical devices. This argument merits little discussion. In *Hurley* v. *Heart Physicians, P.C.*, supra, 278 Conn. 317, a case involving a pacemaker, our Supreme Court expressed approval of the application of the learned intermediary doctrine to prescription implantable medical devices. In *Hurley*, our Supreme Court noted that *Vitanza* had adopted the "learned intermediary doctrine in the context of prescription drugs" but had not decided "whether the policies behind the rule equally were applicable to prescription medical device cases." Id. The *Hurley* court, however, went on to state that "[n]umerous courts have determined that [the policies behind the rule] are applicable to prescription medical device cases" and that it could see "no principled reason to distinguish between a prescription implantable medical device like a pacemaker and a prescription drug." Id. In *Hurley*, our Supreme Court also noted that the parties had failed to cite any cases for the proposition that the learned intermediary doctrine should not be applied in the context of that case. Id. Likewise, the plaintiff here fails to cite any cases for that proposition. In light of *Hurley*, we therefore conclude that, under Connecticut law, the learned intermediary doctrine properly is applied to cases involving prescription implantable medical devices.[6] See also

[6] As our Supreme Court noted in *Hurley* v. *Heart Physicians, P.C.*, supra, 278 Conn. 317 n.10, numerous jurisdictions have recognized the application of the learned intermediary doctrine to prescription medical devices. See, e.g., *Figueroa* v. *Boston Scientific Corp.*, 254 F. Sup. 2d 361, 370 (S.D.N.Y. 2003) (vaginal sling to combat female urinary stress incontinence); *Skerl* v. *Arrow International, Inc.*, 202 F. Sup. 2d 748, 753–54 (N.D. Ohio 2001) (surgically implanted morphine pump); *Mozes* v. *Medtronic, Inc.*, 14 F. Sup. 2d 1124, 1130 (D. Minn. 1998) (cardiac pacemaker); *Hansen* v. *Baxter Healthcare Corp.*, 309 Ill. App. 3d 869, 881, 723 N.E.2d 302 (1999) (tubing to connect catheter), aff'd, 198 Ill. 2d 420, 764 N.E.2d 35 (2002); *Vaccariello* v. *Smith & Nephew Richards, Inc.*, 94 Ohio St. 3d 380, 384, 763 N.E.2d 160 (2002) (pedicle screw implanted in spine); *Rosci* v. *Acromed, Inc.*, 447 Pa. Super. 403, 423, 669 A.2d 959 (1995) (bone plates and screws).

*Desmarais* v. *Dow Corning Corp.*, 712 F. Sup. 13, 17–18 (D. Conn. 1989) (breast implants).

Alternatively, the plaintiff argues that although comment (k) to § 402A of the Restatement (Second) of Torts and the learned intermediary doctrine may be applied to certain medical devices, the plates manufactured by the defendant do not fall within the ambit of these doctrines. Specifically, the plaintiff expressly urges this court to draw a distinction, as a matter of law, between the various classes of medical devices as specified in the Medical Device Amendments of 1976 (amendments), 21 U.S.C. § 360c et seq., to the Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq. Under the amendments, medical devices intended for human use are classified as class I, II or III devices, depending on the extent of regulatory control necessary to ensure their safety and effectiveness, with class III devices being subject to the highest level of control. The plates manufactured by the defendant, which were surgically implanted into the plaintiff by Lena, are class II devices. In his appellate brief to this court, the plaintiff contends that comment (k) and the learned intermediary doctrine should be applied only to class III devices and not to class II devices.

We decline, at this juncture, to accept the plaintiff's invitation to draw a bright line distinction between class II and class III medical devices in determining the applicability of comment (k) and the learned intermediary doctrine. The plaintiff has failed to provide any persuasive reason why a blanket rule excepting all class II medical devices from the application of these doctrines is appropriate or necessary. Indeed, beyond the plaintiff's mere reference to the portion of the definition of a class III device, which states that it is a device that is "purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of

human health or presents a potential unreasonable risk of illness or injury"; 21 U.S.C. § 360c (a) (1) (C) (i) and (ii) (I); the plaintiff has failed to explicate his argument as to why only class III devices should fall within the ambit of comment (k) and the learned intermediary doctrine. Moreover, the plaintiff has not cited any cases in which such a distinction has been applied, and we decline to draw a distinction here. To the extent that the plaintiff's cryptic argument seeks to draw a distinction on the basis of the life sustaining or life supporting qualities of the devices, we find such a contention untenable because class II devices, by definition, also may include some devices that are "purported or represented to be for a use in supporting or sustaining human life . . . ." 21 U.S.C. § 360c (a) (1) (B).

We conclude that the plaintiff has failed to provide a persuasive reason why the rationale underlying the applicability of comment (k) to § 402A of the Restatement (Second) of Torts and the learned intermediary doctrine to prescription drugs and prescription medical devices, such as pacemakers, should not be applied to the plates manufactured by the defendant, which are surgically implanted by physicians. Accordingly, we conclude that the court properly gave the jury an instruction on these applicable doctrines.

## II

The plaintiff next contends that the court abused its discretion when it "allowed into evidence portions of Dr. Lena's medical records and allowed [Lena] to testify from the reports on matters that were opinion . . . ." Specifically, the plaintiff takes issue with Lena's notation in the July 2, 2002 medical record in which he stated that "[the plaintiff] was instructed regarding the conservative nature of treatment for this and the fact that it is a race between his biology and the plate breaking." In a similar vein, the plaintiff also takes issue with

the following statement in the November 4, 2002 record: "It is always a race between biological healing and plate failure since this is a load sharing device. Due to persistent motion at the fracture, the plate has subsequently failed."[7] The plaintiff argues that because Lena was not an expert witness,[8] the court should have redacted these two portions of the medical records and prohibited Lena from testifying about the contested statements.

The following procedural history and facts are necessary to give context to the plaintiff's claim on appeal. On January 3, 2006, and prior to trial, the plaintiff filed a motion in limine, requesting that the court prohibit the defendant from introducing "evidence by way of fact or opinion testimony from Dr. Lena," who was not retained as an expert witness, about, inter alia, "causation."[9] In that motion, the plaintiff, however, did not refer to evidence concerning the "race between biological healing and plate failure," which statements were contained in the medical report.

On January 17, 2006, the court conducted a preliminary hearing on, inter alia, the plaintiff's January 3, 2006 motion in limine and on the parties' stipulation of exhibits as well as the objections raised in connection with the exhibits. Prior to this hearing, the plaintiff and the defendant had marked the medical records prepared by Lena as plaintiff's exhibit two and defendant's exhibit A, respectively. The plaintiff did not object to defendant's exhibit A, and it was marked as a full exhibit.

---

[7] We note that the November 4, 2002 medical record was authored by James P. Alvarez, a physician's assistant who was supervised by Lena. The medical record indicates that Lena was present at the November 4, 2002 treatment session.

[8] The defendant failed to disclose Lena as an expert witness in accordance with Practice Book § 13-4.

[9] Specifically, the plaintiff, by way of his motion in limine, sought to preclude "evidence by way of fact or opinion testimony from Dr. Lena [who was not retained as an expert witness] that the product in question and the defendant manufacturer meets a 'gold standard,' that the product contains adequate warnings, adequate instructions or that the product may be 'bent' and causation."

The defendant filed a response to the plaintiff's exhibit list, and, with respect to the records prepared by Lena, stated that it did not have any objections on the ground of authenticity but reserved the right to object on relevance grounds. At the January 17, 2006 hearing, the plaintiff stated that after his discussion with the defendant, it was his understanding that the defendant did not have any objections to the medical records being admitted as full exhibits. The defendant, agreeing with the plaintiff, then stated "[j]ust so there isn't any misunderstanding, with regard to [the plaintiff's] exhibits one and two . . . which are the records of . . . Lena, we have no objection to those being admitted." The court recessed to allow the parties to mark the remaining exhibits. The medical records, including the July 2 and November 4, 2002 records, were admitted as full exhibits.

With respect to the plaintiff's January 3, 2006 motion in limine, the court heard arguments from the parties and ruled generally that the "physicians [including Lena] may testify as to their—as treaters to their treatment, but not as to any opinions that they may have rendered outside of that treatment." The defendant then sought clarification from the court as to the permissible scope of Lena's trial testimony. The plaintiff stated that although the court could articulate its ruling, he was going to stand by the court's ruling. The court then replied that "[t]he immediate cause for concern . . . is in terms of what exactly is in the medical records that have been . . . stipulated to." The defendant then directed the court's attention to the July 2 and November 4, 2002 medical records.

With respect to the specific matters addressed in the motion in limine,[10] the court stated, inter alia, that "[t]he court's ruling is that it's in the medical record. So that

[10] The court granted the plaintiff's motion with respect to the preclusion of evidence from Lena about the product being the "gold standard" and whether the product contained "adequate warnings" or "adequate instructions."

the reason the first and maybe the second failed is nonunion. That's in the record. [Lena] can say that. Causation . . . he can say nonunion.[11] It's in the record."

The plaintiff then argued that his motion in limine was directed to any statements of opinion by Lena and that, therefore, the ruling on the motion "would affect the opinions that are in the record and they will be redacted." Again, the plaintiff did not mention specifically the portions of the medical records relating to the race between biological healing and plate failure. In response to the plaintiff's argument, the defendant asserted that the medical records should not be redacted because the parties already had agreed that the records were full exhibits. The court then ruled that "[the record has] been marked. It's in evidence. If it's in the record, it's coming in."

The next day, before the commencement of the evidence, the plaintiff raised an objection to portions of the July 2 and November 4, 2002 records prepared by Lena, on the ground that they were opinions, and sought to have them redacted and to preclude Lena from testifying about those matters. After argument from the parties, the court stated: "The court's ruling will stand on the issue. The court understands the exhibits were marked. The court considers this to be more in the nature of treatment that is in the doctor's record. . . . It's part of his treatment record, and the court does not feel that it is an issue of surprise to the plaintiff. Apparently, it has been in the record for a long time. So, the ruling stands."

Having set forth this procedural background, we now turn to the plaintiff's claim on appeal, in which he challenges the propriety of the court's denial of his request for the redaction of portions of the medical records and

---

[11] According to Lena, nonunion occurs when a fractured bone fails to heal properly.

the court's allowance of testimony by Lena concerning those portions of the medical records.[12] The plaintiff

[12] In his brief to this court, the plaintiff directs us to the portions of the medical records that he claims should have been redacted, namely, the statements from the July 2 and November 4, 2002 medical records concerning the race between biological healing and plate failure. The plaintiff's brief, however, is devoid of any specific references to the portions of Lena's trial testimony that he challenges on appeal. See Practice Book § 67-4 (c); see also *Cichocki* v. *Quesnel*, 74 Conn. App. 299, 301, 812 A.2d 100 (2002) ("[f]or evidentiary rulings claimed to be improper to be reviewed by this court, they must be set forth in the briefs as required and outlined by the rules of practice" [internal quotation marks omitted]). Rather, the plaintiff makes a general assertion that the court should not have "allowed testimony from [Lena] about these comments." Nevertheless, our careful review of the record reveals that the defendant's counsel questioned Lena on two occasions about the challenged portions of the medical records. We note that the plaintiff objected to the questions, but the grounds he raised during trial are different from the ground he raises on appeal and the ground he had raised at the pretrial hearing on his January 3, 2006 motion in limine.

During the defendant's direct examination of Lena, the following examination occurred:

"[The Defendant's Counsel]: [The July 2, 2002 medical record] says at the end that [the plaintiff] was instructed that it is a race between his biology and the plate breaking. Did you give instructions along those lines to [the plaintiff] at that time?

"[The Witness]: We always instruct patients with—

"[The Plaintiff's Counsel]: Objection, Your Honor, it calls for a yes or no.

"The Court: Sustained.

"[The Defendant's Counsel]: Can you just tell us—

"[The Witness]: Yes.

"[The Defendant's Counsel]:—yes or no whether you did tell [the plaintiff] that at that time?

"[The Witness]: Yes.

* * *

"[The Defendant's Counsel]: Okay. And it's written [in the November 4, 2002 medical record], it is always a race between biological healing and plate failure since this is a load sharing device. Due to persistent motion—

"[The Plaintiff's Counsel]: Your Honor, I'm going to object to the witness testifying about the document.

"The Court: Well, I suppose a question is coming.

"[The Defendant's Counsel]: I have to read it before I can ask the question, Your Honor.

"[The Plaintiff's Counsel]: Well, I guess the question could be, what does it say?

"The Court: I'm going to allow it. Overruled.

"[The Defendant's Counsel]: Due to persistent motion at the fracture the plate has subsequently failed. Was that medical finding for this patient that you wrote . . . written in your chart on that day?

contends that the court abused its discretion in failing to redact the challenged notations in the medical records and in permitting Lena to testify about these notations because the statements had "nothing to do with the care and/or treatment of the plaintiff." The defendant argues that the court properly denied the request to redact the disputed portions of the July 2 and November 4, 2002 medical records because they constituted statements of fact and were related to Lena's treatment of the plaintiff. The defendant contends that the court properly permitted Lena to testify that the contested notations appeared in his treatment record for the plaintiff and also argues that Lena, in his testimony, did not offer opinions about the notations. We agree with the defendant and conclude that the court did not abuse its discretion.[13]

---

"[The Witness]: Yes.

"[The Plaintiff's Counsel]: Objection, Your Honor, because the document was not written in his chart. This was a document written by a James P. Alvarez . . . who's not here. He didn't write it. Dr. Lena did not write this. And I object.

"The Court: The question was written in this chart. The question was not whether he wrote it.

"[The Plaintiff's Counsel]: This is not his chart. This is a report.

"The Court: Well, can we—

"[The Defendant's Counsel]: Let me see—

"The Court: Can we refer—is it marked as an exhibit? Is this a separate exhibit?

"[The Defendant's Counsel]: Yes, sir, this is a—this is tab—what tab is it, doctor? Twenty?

"[The Witness]: It's twenty.

"[The Defendant's Counsel]: Tab twenty of exhibit A, full exhibit.

"The Court: All right. All right. You may continue.

"[The Defendant's Counsel]: Dr. Lena, is this part of your office record for [the plaintiff]?

"[The Witness]: Yes."

[13] We also reiterate that the medical records in question were admitted as full exhibits, without objection by the plaintiff, as defendant's exhibit A. Additionally, the plaintiff affirmatively offered and marked another set of the medical records prepared by Lena, in their unredacted version, as plaintiff's exhibit two—also a full exhibit. Although the plaintiff initially agreed to the submission of the unredacted records, he later orally requested that the court redact the portion pertaining to the "race between biological healing and plate failure."

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *Bunting* v. *Bunting*, 60 Conn. App. 665, 670, 760 A.2d 989 (2000).

As we stated previously, the court, in its January 17, 2006 ruling on the plaintiff's motion in limine, held that the treating physicians, including Lena, could testify as to their treatment of the plaintiff but not as to opinions they rendered outside of that treatment. With respect to the plaintiff's redaction request, the court noted that the contested records already had been marked in evidence as full exhibits. The court then concluded that the challenged portions of the medical records were a part of the plaintiff's treatment record and that the contested statements were in the nature of treatment. In so concluding, the court implicitly recognized that the facts surrounding a patient's treatment inevitably involve statements pertaining to diagnosis, treatment and prognosis. Such facts, memorialized in Lena's treatment record of the plaintiff, are a part of the factual matrix surrounding the plaintiff's medical treatment, including the fracture of the first plate implanted in the plaintiff's body. "The distinction between so-called 'fact' and 'opinion' is not a difference between opposites or contrasting absolutes, but instead a mere difference in degree with no bright line boundary. . . . [I]n a changing world there will constantly be a myriad of new statements to which a judge must apply the distinction. Thus, good sense demands that the trial judge be

accorded a wide range of discretion at least in classifying evidence as 'fact' or 'opinion,' and probably in admitting evidence even where found to constitute opinion." 1 C. McCormick, Evidence (5th Ed. 1999) § 11, pp. 45–46.

In light of the inherent difficulties in distinguishing between opinions and facts in the context of a patient's treatment record, we cannot conclude that the court abused its discretion in determining that the challenged portions of the July 2 and November 4, 2002 medical records concerned Lena's treatment of the plaintiff and, thus, properly were characterized as the facts of treatment. Accordingly, the court properly denied the plaintiff's request to redact the July 2 and November 4, 2002 medical records.[14] Although Lena did testify about the statements in the treatment record, he did not offer any opinions about the notations. The court therefore properly permitted testimony from Lena about how those notations appeared in his treatment record for the plaintiff. Thus, we conclude that the court did not abuse its discretion.

### III

The plaintiff last claims that the court improperly refused to allow him to cross-examine the defendant's expert witness, Lyle D. Zardiackas, who has a doctorate in materials science, using the deposition testimony of Lena.[15] We conclude that the record is inadequate for review of the plaintiff's claim.

[14] Furthermore, the evidence of Lena's use of the plates to treat the plaintiff's bone and the record of their surgical implantation was relevant to the application of the learned intermediary doctrine's principle that treating prescribing physicians, as learned intermediaries between the manufacturer and consumer, stand in the best position to evaluate the risks and benefits of a particular course of treatment. In this case, Lena weighed the risks of plate failure against the potential benefits of the use of those very plates to promote healing.

[15] The deposition testimony of Lena was marked for identification at trial.

The following additional facts and procedural history are relevant. Lena, who testified at trial on behalf of the defense, also had given deposition testimony prior to trial. During the plaintiff's cross-examination of Zardiackas, the plaintiff referred to a statement in Lena's deposition testimony. The defendant objected, and a sidebar conference was held. The court sustained the defendant's objection. The plaintiff resumed his cross-examination of Zardiackas and, again, sought to refer to a statement made by Lena at his deposition. The defendant objected, and the court sustained the objection.[16]

After Zardiackas was excused from the witness stand, the jury left the courtroom. At that point, the court indicated that the plaintiff "[wanted] to put a few of the court's rulings and what [he had] proposed to introduce on the record." The plaintiff then quoted Lena's deposition testimony and explained that during cross-examination of Zardiackas, he had sought to ask Zardiackas about two statements made by Lena at Lena's deposition.[17] Several days later and prior to closing arguments, the plaintiff stated: "I'm not sure if I adequately put on the record Your Honor's sustaining the objection to my allowing cross-examination of Dr. Zardiackas based on excerpts from Dr. Lena's deposition. I just wanted to make sure that that's on the record." The plaintiff then stated: "I think that his deposition is for [identification], defendant's [exhibit] F, and what I wanted to do is ask Dr. Zardiackas questions from page,

---

[16] Neither the ground for the objections, nor the ground for sustaining the objections were stated for the record.

[17] Specifically, the plaintiff's counsel stated: "Just as the offer of proof, I wanted to ask on cross-examination a reference in Dr. Lena's deposition taken on January 11, 2005, on page eighty-nine—pages eighty-nine and ninety.

"The question was: 'But you could not bend it in the operating room.' Answer: 'We don't have the devices available to bend it in the operating room. Quite honesty, I've never tried, I don't think, to bend a plate of this magnitude in the operating room.'

"That's what I wanted to ask the expert witness."

the bottom of eighty-nine, line twenty-four, to the top of ninety through line five, and, just for the record, Your Honor sustained the objection."

On appeal, the plaintiff claims that the court made an improper ruling. Despite the plaintiff's apparent attempts, outside of the jury's presence, to perfect the record for our review, we conclude that the record is inadequate to review the plaintiff's claim. Although the plaintiff stated on the record the portions of Lena's deposition testimony that he had wanted to utilize in his cross-examination of Zardiackas, the plaintiff never asked the court to state on the record the basis of its ruling, in which it had sustained the defendant's objection. Further, the plaintiff failed to put on the record what had transpired during the sidebar confer- ence or even the ground on which the defendant had objected. The plaintiff also did not file a motion for articulation pursuant to Practice Book § 66-5. In the absence of an articulation, we are unable to discern the basis of the court's ruling. Accordingly, we are unable to review the plaintiff's claim. See, e.g., *Grimm* v. *Grimm*, 276 Conn. 377, 388–89, 886 A.2d 391 (2005) ("As is always the case, the [appellant] . . . bear[s] the burden of providing a reviewing court with an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter. . . . In the absence of any such attempts, we decline to review this issue." [Citations omitted; internal quotation marks omitted.]), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).[18]

The judgment is affirmed.

In this opinion the other judges concurred.

[18] We further note that the plaintiff has failed to brief his claim adequately. In his brief, the plaintiff merely refers to Lena's deposition testimony and

to excerpts of the trial transcript. The plaintiff's brief is devoid of any meaningful analysis or citation to case law to support his claim that the court's ruling was improper. See *Jellison* v. *O'Connell*, 73 Conn. App. 564, 565–66, 808 A.2d 752 (2002). More importantly, the plaintiff's brief fails to identify the basis of the court's ruling, in which it sustained the defendant's objection. See Practice Book § 67-4 (d) (3) (appellant raising claim of evidentiary error required to include in brief "a verbatim statement of the following: the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling").